TOWN OF MEDARY, and another, Plaintiffs-Appellants, v. CITY OF LA CROSSE, Defendant-Respondent.

Court of Appeals

*No. 77–809. Argued November 30, 1978.—Decided January 31, 1979.*
(Also reported in 277 N.W.2d 310.)

102

For the plaintiffs-appellants there were briefs by *Bosshard, Sundet & Associates,* and oral argument by *John Bosshard* of *Bosshard, Sundet & Associates,* of La Crosse.

For the defendant-respondent there was a brief by *John K. Flanagan,* city attorney, and oral argument by *John K. Flanagan,* city attorney, of La Crosse.

Before Gartzke, P.J., Bablitch, J., Dykman, J.

DYKMAN, J.   The Town of Medary and its sanitary district bring this declaratory judgment action to challenge an annexation ordinance enacted by the City of La Crosse. After trial, the trial court declared the ordinance valid and dismissed the town's complaint. The town appeals.

The town argues that the ordinance is void for the following reasons: (1) a signature of one of the land owners on the annexation petition is invalid because the owner did not sign the petition personally but rather through a special power of attorney; (2) the signatures of the corporate owners were not authorized; (3) the city did not consider the determination of public interest

made by the Department of Local Affairs and Development; (4) the signatures of three electors were obtained by economic pressure, duress and threat; and (5) the annexation violates the rule of reason.

An annexation ordinance is presumed valid. The town has the burden of proving it invalid. *Town of Lafayette v. City of Chippewa Falls,* 70 Wis.2d 610, 618, 235 N.W. 2d 435 (1975).

Attached to and made part of this opinion is a diagram of the annexed area showing the individual parcels and the relation of the annexed area to the cities of Onalaska and La Crosse. This diagram was not in the record although it is based on and similar to a trial exhibit which could not be reproduced.

After trial, the court found the annexation petition was validly signed by the owners of parcels 1, 2, 5, 6 and 7, 8, 9. The area annexed consisted of 285.29 nonroad acres, and the signers of the petition held 166.15 acres. Four electors, a majority of the persons who resided in the area to be annexed, also signed the petition.

On the map, parcel 13 is the site of the proposed Dayton-Hudson shopping development, allegedly a $20,-000,000 complex.

The majority of parcels 1, 2, 3, and 11 is designated in the record as flood plain.

The record does not contain a scale map showing the area annexed in relation to the cities of La Crosse and Onalaska. The maps in the record (as reflected in the diagram contained in this opinion) do show that the city limits of Onalaska and the new city limits of La Crosse created by the annexation are 33 feet apart at the extreme northwest of parcel 3. The annexation has created a "pocket" in the town of Medary between Onalaska and the new La Crosse city limits. The pocket is connected to the rest of the town by the 33 foot strip between the two cities.

The annexed land is now zoned 69.68 acres commercial (parcels 6, 7, 13) ; 7.7 acres residential (parcel 4 and part of parcel 2) ; and 201.41 acres (the balance of non-road area) light industrial.

### SIGNATURES ON THE PETITION

Section 66.021 (2) (a) 1 requires that a petition for annexation be signed by a majority of the electors residing in the territory sought to be annexed and either the owners of one-half the land in the territory or the owners of one-half the real property in assessed value.

Section 990.01 (38), Stats., requires that if the signature of any person is required by law, "it shall always be the handwriting of such person or if he is unable to write, his mark or his name written by some person at his request and in his presence."

One of two tenants in common who owned parcel 2 signed the petition personally and on behalf of his co-owner by virtue of a special power of attorney. The town argues that although the power of attorney was properly executed, the signature was invalid because the petition must be signed personally.

The petition fails if the power of attorney is invalid because the petition would not contain the signature of either the owners of one-half the land in the territory or the owners of one-half the real property in assessed value.

The town bases its argument on holdings by the Wisconsin Supreme Court that electors cannot delegate power to sign annexation petitions. *De Bauche v. Green Bay,* 227 Wis. 148, 153–154, 277 N.W. 147 (1938). In *Town of Fond du Lac v. City of Fond du Lac,* 22 Wis.2d 533, 539, 126 N.W.2d 201 (1964), the court said,

The signing of a petition for annexation is more than the exercise of a private right or of a property right.

The right . . . to participate in an annexation proceeding partakes of the nature of a political right "analogous to voting upon the question" and therefore must be the elector's "individual act . . . discharging his duty in shaping and influencing this particular affair of government."

The town further argues that sec. 990.01(38), Stats., requires the personal signature of both owners of the property. The trial court found that a property owner who signs a petition for annexation is exercising a property right, and the signature by the special power of attorney was valid.

The *De Bauche* and *Fond du Lac* cases involved individuals signing annexation petitions as electors. The question we face is whether the rationale of the *De Bauche* and *Fond du Lac* cases should be extended to prohibit a property owner from delegating the right to sign an annexation petition by the use of a special power of attorney.

The right to sign or refuse to sign an annexation petition is one of many rights that accompany the ownership of land. For property owners, this right does not depend upon residency. Unlike electors, who must reside in the area to be annexed, property owners may reside far from the area. Their participation in the annexation debate occurs only because the annexation may affect property they own. Ownership itself, detached from the personal benefits or detriments that accompany residency in a municipality, is more of a private right than the political right a resident may have in annexation. A distinction is made in sec. 66.021(2)(a), Stats., between those who own property and those who use property. The two types of interests are treated differently because they are different. Thus, the political nature of annexation petitions recognized as applicable to electors in *De Bauche* and *Fond du Lac* is not applicable to property owners.

We do not construe sec. 990.01(38), Stats., to prevent the delegation of authority to sign an annexation petition on behalf of a property owner. Section 990.01(38), Stats., is similar to subd. 19, sec. 4971, R.S. (1878), which read:

[I]n all cases, where the written signature of any person is required by law, it shall always be the proper handwriting of such person, or in case he is unable to write, his proper mark, or his name written by some person at his request, and in his presence.

Section 2630, R.S. (1878) required that a summons "shall be subscribed by the plaintiff, or his attorney." In *Mezchen v. More,* 54 Wis. 214, 11 N.W. 534 (1882), the court held that sec. 4971 did not require that the signature on the summons be in the handwriting of the plaintiff or his attorney; a printed name was sufficient. *Mezchen* was cited in *De Bauche,* where the court stated at 152.

Clearly one may nominate another to act for him under some circumstances, as in the exercise of a private right, while under other circumstances the impropriety of permitting him as an elector to delegate his participation in governmental matters to another would be as plain. *Cochell v. Reynolds,* 156 Ind. 14, 58 N.E. 1029.

In *Village of Brown Deer v. City of Milwaukee,* 16 Wis.2d 206, 212, 114 N.W.2d 493 (1962), *cert. den.* 371 U.S. 902, the court, in referring to a corporation which owned a portion of the territory to be annexed, stated that signing an annexation petition is a "political act." The court went on to quote *De Bauche* to the effect that signing an annexation petition amounts to discharging a political duty.

In this case James W. "Jake" Hoeschler gave B. T. Hall a special power of attorney "to execute and sign any petition to annex to the City of La Crosse, Wisconsin, any real estate in which I may have an interest located in Sections 10, 15, and 16 of Township 16 North, Range 7 West, Town of Medary, La Crosse County, Wisconsin." The power of attorney was acknowledged before a notary public, and contained the signature of B. T. Hall certified as true and correct by Mr. Hoeschler.

Had this power of attorney been to enable B. T. Hall to sign a properly drafted deed to Mr. Hoeschler's real estate, its use for that purpose would have resulted in a valid conveyance of the property. A purchaser of the real estate would have been able to sign the annexation petition.

Even in *Brown Deer*, where the court referred to a corporation performing a political act by signing an annexation petition, the issue was not whether an agent *could* act for the corporation, but whether the agent was *authorized* to act for the corporation. In this case a special power of attorney was used for the sole purpose of enabling B. T. Hall to sign the annexation petition for a property owner, James W. "Jake" Hoeschler. Because the authority of Hall is unquestioned, and the interest represented is primarily a private interest, we hold that the signatures of the owner of parcel 2 are valid and the total acreage of that parcel can be included in the calculation of the acres represented on the annexation petition.

## CORPORATE AUTHORIZATIONS

The town alleges that the acreage in parcels 5, 6, and 7 should not be counted in the total property represented by owners on the petition because the signatures of the two corporations owning those parcels were in-

validly authorized. The total acreage represented by these parcels is 7.68 acres. Even assuming that the signatures are unauthorized, so that the acreage must be subtracted from the total represented on the petition, the remaining acreage represented would still be more than one-half of the total.[1]

This court declines to address the issue of validity of the corporate signatures, because it is not necessary to do so.

### DETERMINATION OF PUBLIC INTEREST

█ The town submits that the annexation ordinance is void because the city did not consider the determination of public interest made under sec. 66.021 (11–13), Stats., by the Department of Local Affairs and Development (D.L.A.D.).

Section 66.021 (11) (a) states in relevant part:

No annexation proceeding within a county having a population of 50,000 or more as shown by the last federal census shall be valid unless the person causing a notice of annexation to be published . . . shall . . . mail a copy of the notice and a scale map of the proposed annexation to . . . the department of local affairs and development. The department may within 20 days after receipt of the notice mail to the clerk of the town

---

[1] Parcel 1           78 acres
Parcel 2           51.28
Parcel 5            5.00
Parcels 6 & 7       2.68
Parcel 8           25.9
Parcel 9            3.29
                 ─────────
                 166.15 acres

Subtracting parcels 5, 6, and 7 would result in a total acreage of 158.47. The petition must contain the signatures of the owners of 142.65 acres.

within which the territory lies and to the clerk of the proposed annexing village or city a notice that in its opinion the annexation is against the public interest. . . . The annexing municipality shall review such advice before final action is taken.

The Department of Local Affairs and Development prepared a report which concluded that the annexation was not in the public interest. The city clerk received the report on March 8, 1978, and copies were sent to the mayor, city planner, and city attorney. The original annexation ordinance was passed on March 9 by the common council. The trial court properly found that the law does not prohibit annexation if D.L.A.D. finds it is not in the public interest, *Town of Menasha v. City of Menasha,* 42 Wis.2d 719, 739, 168 N.W.2d 161 (1969).

The city clerk testified that she did not believe that the D.L.A.D. report was presented to or discussed by the city council at its meeting on March 9, 1978. However, the report of the Judiciary and Administration Committee shows that the city council did have the D.L.A.D. report prior to passing the annexation ordinance. The common council is presumed to have acted regularly and lawfully. *Bohn v. Sauk County,* 268 Wis. 213, 67 N.W.2d 288 (1954). The record is silent as to what each council member did to review the D.L.A.D. report. We affirm the trial court's holding that the town had not sufficiently overcome the presumption that the council acted regularly in enacting the annexation ordinance, and therefore conclude that the ordinance was lawfully enacted.

### SIGNATURES OF ELECTORS

Three of the four electors who signed the petition for annexation were tenants of Paul W. Hemker, circulator

of the petition. The town argues that those signatures were obtained through the use of economic pressure, duress, and threat. The trial court made the following finding which is amply supported by the record:

[A] majority of electors in the area to be annexed signed the petition, i.e. Gerald S. Powell, Jr., Scott Raseman, Kurt Kuehl and Ernest F. Hoffman. There is no challenge to the signature of Hoffman, but the signatures of the other three who rent a house owned by Paul W. Hemker are challenged as having been obtained by economic pressure and coercion. (*Town of Fond du Lac v. City of Fond du Lac, supra*). In November, 1977, Hemker approached Gerald S. Powell, who was alone in the residence at the time, about signing the annexation petition. Powell stated that they were confused as to which way to sign and Hemker said he would evict them or they'd be out and he'd level the land. Powell passed this information on to the other two tenants, who shared the house with him, when they returned after the Hemker visit and they decided to have a meeting with Mr. Stanley Peterson, Chairman of the Town of Medary, and Mr. Hemker.

Thereafter and prior to February 20th, 1978, these three renters met with Mr. Peterson who came to the house one night and sought to convince the renters not to sign the petition.

On February 20th, 1978, the three renters met for about four hours with Mr. Peterson, Mr. Hemker and Hemker's attorney to discuss the pros and cons of the proposed annexation and at the conclusion, the renters decided that the pro-annexation was the better point of view and at that time signed the petition.

That these three renters, Powell, Raseman and Kuehl, are independent minded individuals, that they were not coerced, intimidated, or pressured by Hemker, that they made a full and independent investigation of the pros and cons of annexation; that any coercive influence, intimidation or pressure as a result of Hemker's remarks in November, 1977, was fully attenuated by the passage of time and the conferences held with the opponents and proponents of annexation, that the signing of the peti-

tion by Powell, Raseman, and Kuehl on February 20, 1978 was done freely, independently, voluntarily, intelligently and knowingly.

The finding by the trial court is not against the preponderance of the evidence and is affirmed.

## RULE OF REASON

The town argues that the annexation violates the "rule of reason." Under this court-made rule,[2] (1) exclusions and irregularities in boundary lines must not be the result of arbitrariness; (2) some reasonable present or demonstrable future need for the annexed property must be shown; and (3) no other factors must exist which would constitute an abuse of discretion on the part of the municipality. *Town of Pleasant Prairie v. City of Kenosha,* 75 Wis.2d 322, 327, 249 N.W.2d 581 (1977).

## ARBITRARINESS

An annexation may not contain exclusions and irregularities that establish arbitrariness. *Town of Waukesha v. City of Waukesha,* 58 Wis.2d 525, 532, 206 N.W.2d 585 (1973). The town concedes that the general rule is that where direct annexation proceedings are initiated by private property owners, rather than the annexing municipality itself, the latter is not to be charged with arbitrary action in drawing the boundary lines. *Town of Waukesha,* 58 Wis.2d at 531. The issue of arbitrary boundary-drawing generally arises when land owners or electors opposed to annexation are excluded from the

[2] The "rule of reason" was enunciated in *Town of Brookfield v. City of Brookfield,* 274 Wis. 638, 646, 80 N.W.2d 800 (1957).

proposed area so as to ensure the success of the annexation. Recently, in *Town of Pleasant Prairie v. City of Kenosha,* 75 Wis.2d 322, 342, 249 N.W.2d 581 (1977), the court stated, "Where the boundaries of an otherwise unexceptional direct annexation are fixed by petitioners . . . without the exercise of undue influence by the annexing city or village, we see no reason why the petitioners may not determine those boundaries so as to insure the annexation's success." The court in *Pleasant Prairie* pointed out that the annexed area was a "compact quadrilateral" containing no internal exclusions (*i.e.,* town islands, now prohibited under sec. 66.021(15)).

A careful reading of the cases indicates that where the annexed area is an "unexceptional" shape, and the city is not a petitioner, the boundaries of an annexed area will not be scrutinized for arbitrariness. *Town of Lyons v. Lake Geneva,* 56 Wis.2d 331, 202 N.W.2d 228 (1972). The north boundary of the land included in the petition for annexation stopped at the boundaries of land owned by Linmar, Inc. (parcels 6 and 7). Linmar signed the petition. As the court stated in *Town of Waukesha v. City of Waukesha,* 58 Wis.2d 525, 532–533, 206 N.W.2d 585 (1973):

Where landowners petition for annexation, they are under no obligation to go beyond their immediate area of ownership to include persons or areas of no concern to them. The lady, whose petition for annexation was upheld, stopped at the boundaries of the land she owned. Why would she do otherwise? Folk wisdom has it that one can "go farther and do worse." But there was no requirement or reason for her or for either group of petitioners here to go farther. [Footnotes omitted.]

The rule of reason may, however, be applied to invalidate an annexation where the annexation may re-

sult in "gerrymandered" or "crazy quilt" municipal boundaries, even when the annexation is initiated by a private landowner who sets the boundaries. In *Mt. Pleasant v. Racine,* 24 Wis.2d 41, 127 N.W.2d 757 (1964), Racine Properties, Inc. circulated a petition for annexation, and the city subsequently adopted the requested ordinance annexing 145 acres connected to the southwest corner of the city by a 1,705 foot corridor which varied in width from 152 to 306 feet. The court stated that the city's discretionary power to determine boundaries is not without limit, and that the question is not whether a city can have only one continuous boundary but rather whether the proposed lines are reasonable. The court said:

Shoestring or gerrymander annexation is not a rare phenomenon. The tendency of subdividers to reach far out into the countryside for vacant land, and their desire to attach it to the city of services, is natural; however, this can lead to annexations which in reality are not more than isolated areas connected by means of a technical strip a few feet wide. Such a result does not coincide with legislative intent, and tends to create crazy-quilt boundaries which are difficult for both city and town to administer. [Authority omitted.] 24 Wis.2d 41, 46–47.

The *Mt. Pleasant* case appears to give the court authority, under the rule of reason, to consider the shape of the annexed territory in relation to the municipality apart from the determination of whether there are any arbitrary exclusions. This is the same sort of determination made by the Department of Local Affairs and Development under sec. 66.021(11)(c), Stats.

In this case the department found the annexation to be against the public interest because

[A]nnexation of the territory would nearly isolate a portion of the town more than a mile long between the City of LaCrosse [sic] and the City of Onalaska, leaving

it connected to the larger part of the town by a connection half the width of the roadway at the northeast corner of Section 16, and that the proposed annexation is therefore of unreasonable shape.

An annexation is not rendered unreasonable because it cuts a town in half. *Town of Waukechon v. Shawano,* 53 Wis.2d 593, 193 N.W.2d 661 (1972). In an apparent attempt not to create an "island," the annexation here left a 33 foot gap between the new city limits and the Onalaska city limits, with an odd-shaped piece of town in between. The trial court found that this annexation did not divide the town into separate areas. This finding is supported by an examination of two maps that were exhibits received by the trial court. The trial court also rightfully concluded that the annexation was contiguous to the City of La Crosse.

This court does not find the annexation to violate the principles enunciated in the *Mt. Pleasant* case. While the shape of the annexation is somewhat irregular, the irregularity is partly necessitated because of the irregularity of the La Crosse city limits along the joint boundary of the city and proposed annexed area. The result of this annexation is not the extreme crazy-quilt or shoestring annexation disapproved in *Mt. Pleasant.*

### NEED

The rule of reason requires that the annexing municipality have some reasonable present or demonstrable future need for the annexed territory. *Town of Waukesha v. City of Waukesha,* 58 Wis.2d 525, 533, 206 N.W.2d 585 (1973). As a corollary to this requirement, it is

necessary that the territory annexed be reasonably suitable or adaptable to the city's needs. *Town of Brookfield v. City of Brookfield,* 274 Wis. 638, 646, 80 N.W.2d 800 (1957) ; *Town of Pleasant Prairie v. City of Kenosha,* 75 Wis.2d 322, 334, 249 Wis.2d 581 (1977). The municipality need not have a pressing imperative need for the territory. A showing of reasonable need is sufficient. *Town of Pleasant Prairie,* 75 Wis.2d 322, 335.

On the other hand, a showing that the territory sought to be annexed is merely desirable, better than land already controlled, or that a particular city will be better able to provide services to an area does not satisfy the rule of reason. *City of Beloit v. Town of Beloit,* 47 Wis.2d 377, 389–91, 177 N.W.2d 361 (1970).

The findings of the trial court with respect to need must be upheld unless they are contrary to the great weight and clear preponderance of the evidence. *City of Beloit,* 47 Wis.2d at 388, 389.

The testimony which supports the trial court's finding that the City of La Crosse has shown an acute need to annex land for industrial development came from the city's planning director, Ronald Bracegirdle. He testified that La Crosse is extremely short of land which is improved, available and ready for industrial purposes. He estimated the amount available at less than 30 acres. Two sites had been developed for industrial use in the early 1970's. The first site totalled 51 acres, and at the time of trial, four acres remained available for development, together with 14 acres which are most economically developed together with the land in this annexation. The other site originally totalled about 65 acres, and at the time of trial was substantially developed with less than ten percent still in its original ownership.

It is thus apparent that since the early 1970's, La Crosse has had industrial development that consumed

92 acres. If development continues at that rate, the present "less than 30 acres" will last a maximum of less than three years. Bracegirdle testified that he received an inquiry on the availability of industrial development land two to three times a week. This is a far different situation from the annexation disapproved in *City of Beloit v. Town of Beloit*, 47 Wis.2d 377, 177 N.W.2d 361 (1970) where the city had a 31.9 year supply of residential land.

Seventy-one percent of the annexed property, or 201.41 acres, was designated for industrial purposes.

The town argues that the city does not "need" more industrial land because the unemployment rate in La Crosse is 5.8 percent, less than the national average. This assumes that a 5.8 percent unemployment rate is acceptable, and that no additional job opportunities are needed. La Crosse should be commended for having a better-than-average unemployment rate, rather than discouraged from achieving full employment.

The town also asserts that because La Crosse does not have a burgeoning population, it does not need further job opportunities. This argument assumes that potential employers will seek out industrial sites in areas of high unemployment and rapid population growth rather than seeking sites that are otherwise commercially superior, and letting employees come to them. The town produced no evidence of employers' criteria in choosing industrial sites. We will not speculate on what those criteria might be. This argument is also an assertion that La Crosse can exist without further industrial growth, and therefore does not "need" more industrial land. This rationale would defeat any annexation of industrial land by any city, and we find no support for such an argument in any Wisconsin authority.

The town similarly contends that areas surrounding La Crosse are developing industrial lands which will

serve La Crosse residents, and that therefore the City of La Crosse does not "need" more industrial land. Were we to use this test, no annexation would conform to the rule of reason because there is always land outside an annexing municipality which can be used for the same purpose that the municipality would use the land.

The town's argument that the land sought for annexation is not available for industrial use because it is unimproved also fails for the same reason: all land is originally unimproved. One of the reasons for annexation is to make improvements available.

It is true, as the town points out, that most of the industrial land contained in the annexation lies within a floodplain, and that that land is therefore unsuitable for present industrial use. However, at the time of trial, the city was about to undertake a study to determine the best method of floodproofing the area. Bracegirdle testified that in his opinion, the area could be floodproofed; the only decision to be made was the method by which the floodproofing was to be accomplished. In fact, a small portion of the annexed area that lies outside the floodplain is immediately adjacent to the city's industrial district, and would be immediately available for development. The annexed area is close to Interstate Highway 90 and a railroad yard. It does not appear unreasonable for La Crosse to expand its industrial land in this area.

Approximately 14 acres of the annexed land was zoned for residential purposes. This is about 5 percent of the total annexed land. The trial court found that the city had a need for residential land.

Bracegirdle testified that it was his opinion that La Crosse needed land for residential purposes. His testimony supporting this conclusion is as follows: La Crosse has only 160 acres of residential land available for development. Residential zoning in La Crosse allows 3

to 3½ units per acre. During the period 1974 to 1977, 1200 housing units were constructed in the City of La Crosse.

It is evident that La Crosse has land available to accommodate about 560 new residential housing units. If residential development continues at the rate of 1200 housing units per four year period, all available residential land in La Crosse will be developed in less than two years.

The town argues that since the City of La Crosse is declining in population, it does not need more residential land. The trial court considered the following estimates of the population of the City of La Crosse obtained from the Department of Administration of the State of Wisconsin.

| | |
|------|--------|
| 1972 | 51,756 |
| 1973 | 48,800 |
| 1974 | 48,477 |
| 1975 | 48,141 |
| 1976 | 48,854 |
| 1977 | 48,566 |

The latest federal census figures introduced were for the year 1970, and showed La Crosse with a population of 50,286.

It appears that the town is correct in its contention that La Crosse is declining in population. Yet, despite a general decline in population, or a trend in that direction, there were 1200 new housing units built in La Crosse from 1974 to 1977. Mr. Bracegirdle attributed this to a decline in the birth rate, which resulted in fewer people in each housing unit. Thus, although the population declined, the number of residents per house also declined, the net effect of which was to require more houses for the remaining population. The trial court was entitled to believe Mr. Bracegirdle, and its finding that the City of La Crosse needed residential land is not

against the great weight and clear preponderance of the evidence.

The town argues that the city does not "need," but only "desires," commercial land and that the annexation ordinance is therefore necessarily void. Only parcels 6, 7 and 13 were designated for commercial uses, and they totaled 69.68 acres.

The trial court found that the City of La Crosse has a reasonable need for land for commercial purposes. Bracegirdle did not testify about this need. His testimony was to the effect that the proposed shopping center located in the annexed area would make transportation to work difficult if not impossible for employees whose employers moved from downtown to the shopping center. He also testified that when the businesses moved to the shopping center, the tax base of the City of La Crosse would be eroded. These are certainly important factors to the City of La Crosse, but they fall into the category of legislative interests. This court is not to consider what is "desirable," "advisable," "necessary," what is "in the best interest" or what "ought to be." These are for the legislature, not the judiciary to determine. *In re City of Beloit,* 37 Wis.2d 637, 644, 155 N.W.2d 633 (1968). A trial court is to determine need, and this court reviews that determination.

The Town of Medary produced evidence that the City of La Crosse did not need additional land for commercial development which the city failed to rebut. The land in the proposed annexation designated for commercial uses contains 69.68 acres, or 24 percent of the land in the total annexation. Does the entire annexation fail because no need has been demonstrated for 24 percent of the land included in the annexed territory?

A municipality is in no position to negotiate or pick and choose when it is presented with a petition for an-

nexation. Section 66.021, Stats., which provides for annexations, does not make any provision for a city to annex only that portion of territory described in an annexation petition for which it has a need. It must annex all of the territory or none of it. The city is prohibited from coercing or giving special economic consideration to those circulating annexation petitions. *Town of Pleasant Prairie v. City of Kenosha,* 75 Wis.2d 322, 331, 249 N.W.2d 581 (1977). There is therefore little a city can do when presented with an annexation petition but accept or reject the entire petition.

The court in *Town of Pleasant Prairie v. City of Kenosha,* 75 Wis.2d 322, 335, 249 N.W.2d 581 (1977) stated:

To sustain the validity of an annexation the annexing municipality need not have a pressing, imperative need for the territory. A showing of a reasonable need for the annexation will be sufficient to sustain annexation. As we said in *City of Beloit v. Town of Beloit, supra,* at page 385:
"The question before the trial court in this case was whether the respondents had overcome the presumed validity of the ordinance and proved the proposed annexation arbitrary and capricious . . . . [T]his required a showing that there was no reasonable need for the annexation. If appellant has shown *any* such reasonable need for annexation, further discussion of necessity requires weighing these facts and determining what is in the best interest of the parties. This is not a judicial function."

We hold that La Crosse need not have a reasonable need for all the territory within the annexed area. A reasonable need for a substantial portion of the territory, here 76 percent, is sufficient. The Town of Medary has failed to show that the City of La Crosse had no reasonable need for the annexed territory.

### ABUSE OF DISCRETION

The rule of reason requires that no other factors exist which would constitute an abuse of discretion. *Town of Waukesha v. City of Waukesha,* 58 Wis.2d 525, 533, 260 N.W.2d 585 (1973). The town in its brief reiterates the reasons it believes the boundaries of the annexation were arbitrary, and the reasons it believes the city has no need for the annexed territory. We do not see any other factors which would constitute an abuse of discretion, and since we have found the annexation's boundaries non-arbitrary, and the city's need for the territory valid, we find that the trial court's conclusion that the annexation ordinance is not the result of an abuse of discretion is not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.