HRUZ, J.
*119 ¶ 1 The Town of Lincoln appeals a grant of summary judgment in favor of the City of Whitehall concerning a grassroots annexation procedure known as "direct annexation by unanimous approval."[1] The Town sought a declaratory judgment that annexation ordinances passed by the City detaching territory from the Town were invalid. The circuit court concluded the Town, under the facts of this case, was statutorily barred from challenging the ordinances on any basis except the requirement that the annexed territory be contiguous to the annexing municipality. The court subsequently granted the City's summary judgment motion on the Town's contiguousness claim.
¶ 2 Under the undisputed facts here, we first conclude the circuit court properly dismissed all of the Town's claims other than the statutory contiguousness claim. Based upon the interplay between various provisions of the direct annexation statute-namely, WIS. STAT. § 66.0217(6)(d)1., (6)(d)2., and (11)(c) -we conclude a town is limited in a court action to challenging contiguity and county parallelism, the latter of which is not at issue here. Given this statutory bar, the court properly concluded that only the Town's challenge to contiguity remained viable.
*407 *120 ¶ 3 We also conclude the circuit court properly granted summary judgment on the Town's contiguousness claim. Contiguity between the annexed territory and the annexing municipality is satisfied, at a minimum, in instances where there is a significant degree of physical contact between the two. That is plainly the case here, where the annexed territory shares an approximately three-quarter-mile border with the City.
¶ 4 We further conclude summary judgment in the City's favor was appropriate to the extent statutory contiguity also requires that the annexed territory not be arbitrarily selected for inclusion. Because the petition at issue was owner initiated, the relevant case law instructs that a town can challenge arbitrariness only if the annexation is of an exceptional shape, or if the annexing municipality is itself either a petitioner or the "real controlling influence" behind the annexation. We conclude, as a matter of law, that the annexed territory here is of an "unexceptional shape" that does not warrant further scrutiny of the territory's boundaries. Further, based on the record evidence before us, no factfinder could reasonably conclude the City was either a petitioner or the "real controlling influence" directing the annexation proceedings. Consequently, we affirm.
BACKGROUND
¶ 5 In 2015, the City of Whitehall's common council passed four annexation ordinances detaching territory from the Town of Lincoln. The annexation was the initiative of Whitehall Sand and Rail, LLC, which was interested in locating a sand mine to the northwest of the City's then-current borders and desired to have it within the City limits. Whitehall Sand and Rail selected the property to be included in the *121 annexed territory, and then it approached the property owners with offers to purchase their land, contingent on annexation.[2]
¶ 6 The annexation was to occur in four phases, with the territory in each phase the subject of a separate ordinance.[3] Phase one consisted of approximately 277 acres extending northward from the City's northern boundary, where the annexed territory and the City shared a border of approximately three-quarters of one mile. Phase two consisted of 292 acres, arranged in a ribbon approximately one-fourth mile wide, extending northwesterly from the northwestern corner of the phase one territory. Phase three consisted of approximately 380 acres, connected to phase two at its southern edge for approximately one-fourth mile before expanding both to the north and to the west. Finally, phase four consisted of approximately 300 acres located to the west of phase three; phases three and four shared a boundary of approximately one-half mile.
¶ 7 Each of the ordinances was adopted pursuant to a method of annexation known as "direct annexation by unanimous approval." This is a grassroots annexation method that requires "all of the electors residing in the territory and the owners of all of the real property in the territory" to petition the city or village for direct annexation. WIS. STAT. § 66.0217(2). Such annexation petitions are presented to the municipality *122 on a "take it or leave it" basis. See *408 Town of Lyons v. City of Lake Geneva , 56 Wis. 2d 331, 338, 202 N.W.2d 228 (1972). Subject to certain filing requirements and a statutory requirement that the annexed territory be "contiguous" to the annexing authority, the municipality may adopt an annexation ordinance by a two-thirds vote of its governing body. Sec. 66.0217(2).
¶ 8 The Town here sought review of the annexation from the Wisconsin Department of Administration (the Department), as was its right under WIS. STAT. § 66.0217(6)(d). The Department concluded the annexation violated statutory contiguity because the territory was in an impermissible configuration. Specifically, the Department concluded the annexation was a "balloon-on-a-string" configuration because phase two was a "long and narrow corridor of territory which primarily serves to connect the much larger territory" in phases three and four.
¶ 9 After receiving the Department's favorable findings, the Town invoked its right to commence this declaratory judgment action seeking a court declaration that the annexation ordinances were invalid and unenforceable. In addition to challenging the annexed territory's contiguity to the City, the Town made several other claims, including that: (1) the annexation petitions were procedurally defective because they were not signed by all the owners of the real property in the territory; (2) the ordinances were arbitrary and violated the "rule of reason," a judicially created method of reviewing a municipality's exercise of its annexation power; and (3) the City, not the individual petitioners, was the real controlling influence behind the annexation petitions.
¶ 10 The City filed a motion to dismiss all of the Town's claims except its contiguousness claim, asserting *123 the Town was barred from challenging those matters under WIS. STAT. § 66.0217(11)(c). The circuit court agreed that para. (11)(c) barred all but the Town's contiguousness claim. The City then filed a motion for summary judgment, asserting statutory contiguity was satisfied as a matter of law because the annexed territory shared an approximately three-quarter mile border with the City and the territory was of an unexceptional shape. The court granted that motion as well, concluding all that was required to satisfy contiguity was that the territory was physically touching an existing City boundary. The Town now appeals.
DISCUSSION
I. The circuit court properly granted the City's motion to dismiss.
¶ 11 We first review whether the circuit court properly granted the City's motion to dismiss all of the Town's annexation challenges except for its contiguousness challenge. A motion to dismiss tests the legal sufficiency of the complaint. Data Key Partners v. Permira Advisers LLC , 2014 WI 86, ¶ 19, 356 Wis. 2d 665, 849 N.W.2d 693. We accept the complaint's factual allegations as true, but legal conclusions are not accepted and are insufficient to withstand a motion to dismiss. Id. , ¶ 18. Whether a complaint states a claim upon which relief can be granted is a question of law we review de novo. Id. , ¶ 17.
¶ 12 It is undisputed the Town had a right to challenge the annexed territory's contiguity to the City after receiving a favorable review of that issue from the Department. As we explain, the circuit court correctly *124 observed that many of the allegations in the Town's complaint go to the issue of contiguity, including its assertions that the annexation resulted in arbitrary boundary lines, that the annexed territory was "something akin to a balloon on a string configuration," and that the municipal *409 boundaries were "gerrymandered." The Town's contiguousness challenge was the subject of the City's later summary judgment motion. Our review of the motion to dismiss concerns all other matters raised in the Town's complaint.
¶ 13 The City argues the statutory scheme contained in WIS. STAT. § 66.0217 significantly constrains a town's ability to challenge an owner-initiated annexation ordinance. It reaches this conclusion by a plain-language interpretation of the direct annexation statute, which interpretation is bolstered by the amendment history of that section. Statutory interpretation begins with the statute's language; if the meaning of the statute is plain, we ordinarily stop the inquiry. State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. The legislative history of a particular provision may be consulted to confirm or verify a plain-meaning interpretation. Id. , ¶ 51.
¶ 14 The current version of WIS. STAT. § 66.0217 significantly circumscribes a town's ability to litigate a direct annexation by unanimous approval. Under para. (11)(c), "no action on any grounds, whether procedural or jurisdictional, to contest the validity of [a direct] annexation [by unanimous approval] may be brought by any town." The statute allows for a single exception: a town may make a court challenge to an *125 annexation to the extent permitted under subd. (6)(d)2. We therefore turn to that subdivision and its related provisions.
¶ 15 WISCONSIN STAT. § 66.0217(6)(d)2. permits a town to challenge an annexation in the circuit court only if the Department "finds that an annexation violates any requirement" specified in subd. (6)(d)1. Section 66.0217(6)(d)1., in turn, provides that the Department may, at the request of a town affected by an annexation, review two things: (1) whether the territory to be annexed is contiguous to the annexing authority; and (2) whether the annexation satisfies para. (14)(b), which requires that some part of the annexing city or village be located in the same county as the territory to be annexed. We refer to these requirements, respectively, as contiguity and county parallelism. If the Department finds a violation of either requirement, the town has forty-five days from receipt of the Department's findings to file a court action challenging the annexation.
¶ 16 The City and the Town dispute which matters may be litigated in a court action subsequent to the Department's review. The Town argues that once the Department has found an annexation deficient for either reason specified in WIS. STAT. § 66.0217(6)(d)1., the annexation may be challenged on any basis. In other words, the Town's position is that it is not limited to challenging contiguity or county parallelism in a court action, but rather it may assert the annexation is invalid for any reason. The City argues a town can litigate in a court challenge only the two matters the Department has been authorized to consider under subd. (6)(d)1.
*126 ¶ 17 Based upon a plain-meaning interpretation of WIS. STAT. § 66.0217 's relevant provisions, we conclude a town, when commencing a court action under subd. (6)(d)2., is limited to challenging contiguity and county parallelism, the only two matters on which the Department may opine under subd. (6)(d)1. This interpretation is the only reasonable one that is faithful to our canons of statutory construction. Specifically, we must interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."
*410 Kalal , 271 Wis. 2d 633, ¶ 46, 681 N.W.2d 110. Subdivisions (6)(d)1. and (6)(d)2. are clearly interrelated and intended to restrict matters that may be raised in the circuit court to those the Department has already considered and found deficient.
¶ 18 The Town's alternate interpretation produces absurdity. Specifically, the Town never explains why the legislature would allow a town to litigate a broad set of challenges to the validity of an annexation under WIS. STAT. § 66.0217(2), while simultaneously limiting the matters the Department can consider during its threshold review. Nothing in subd. (6)(d)2. suggests the Department's findings regarding contiguity or county parallelism should open the door for a town to challenge a direct annexation by unanimous approval on some other basis, not otherwise statutorily enumerated. The Town's interpretation produces the nonsensical result that a town's court challenge, which is contingent on the Department's findings on only two topics, may invoke matters that the Department never even considered. It also would produce the odd result that only towns successful before the Department on a *127 challenge to contiguity or county parallelism could challenge the validity of an annexation on different grounds, while other towns could never bring such a challenge, even if it were valid.
¶ 19 The history of the amendments to WIS. STAT. § 66.0217 supports our conclusion that the scope of circuit court review under subd. (6)(d)2. is the same as the scope of the Department's review under subd. (6)(d)1. Paragraph (11)(c) was enacted in 2003 and, as originally written, barred without exception a town from contesting the validity of a direct annexation by unanimous consent. See 2003 Wis. Act 317, § 3. Thus, in Town of Merrimac v. Village of Merrimac , 2008 WI App 98, 312 Wis. 2d 754, 753 N.W.2d 552, we held that the plain language and legislative history of that version of para. (11)(c) precluded a town from challenging such an annexation on any basis, including contiguity. Id. , ¶¶ 1, 3, 13-14. And in Darboy Joint Sanitary District No. 1 v. City of Kaukauna , 2013 WI App 113, 350 Wis. 2d 435, 838 N.W.2d 103, we applied para. (11)(c)'s bar to hold that a town lacked standing to challenge an apparent lack of county parallelism in the direct annexation at issue in that case. Id. , ¶¶ 3, 11-15.
¶ 20 Both Town of Merrimac and Darboy Joint Sanitary District were decided under the version of WIS. STAT. § 66.0217(11)(c) in effect between 2003 and 2010. In 2012, the legislature revised the annexation statute again, this time enacting the provisions currently located in para. (6)(d). 2011 Wis. Act 128, § 1. At that time, the legislature also carved out the exception to para. (11)(c)'s general bar on town actions contesting the validity of direct annexations by unanimous consent. 2011 Wis. Act 128, § 2. This amendment history supports the view that the exception contained in para.
*128 (11)(c) is to be narrowly construed as responsive to the issues raised by the towns in Town of Merrimac and Darboy Joint Sanitary District . In other words, we find it significant that the new exception in para. (11)(c) was apparently tailored to allow town challenges only to the contiguousness and county parallelism issues raised in those cases.[4]
*411 ¶ 21 The Town nonetheless asserts that WIS. STAT. § 66.0217(11)(c) does not bar its challenge to the annexation on the basis that the petition lacked the necessary signatures of all of the electors and property owners in the territory to be annexed. The Town argues this is a "threshold issue" concerning what procedures and standards govern the annexation. The Town reasons that if the petition did not satisfy the formal requirements of subsec. (2), it was not, in fact, a petition for direct annexation by unanimous approval, and therefore para. (11)(c) does not impose any restrictions whatsoever on the nature of a town's challenge.
¶ 22 We conclude WIS. STAT. § 66.0217(11)(c) bars the Town's challenge to the sufficiency of the petition for direct annexation by unanimous approval. While there is some merit to the tautological notion that subsec. (2) contains "threshold" requirements regarding the sufficiency of the petition actually being one of *129 unanimous consent, that notion does not mean the legislature has permitted towns to raise such a challenge. Rather, such matters are to be considered by the annexing authority when deciding whether to adopt an ordinance. If the petition is in some way lacking-because, for example, it is missing a required signature-the annexing authority lacks the power to adopt the annexation ordinance. Cf. Town of Medary v. City of La Crosse , 88 Wis. 2d 101, 107, 277 N.W.2d 310 (1979) (observing that petitions for annexation are invalid if they fail to comply with certain signature requirements); City of Chippewa Falls v. Town of Hallie , 231 Wis. 2d 85, 91, 604 N.W.2d 300 (Ct. App. 1999) (holding that because referendum petitioners did not reside in the proposed area of annexation, as required by statute, the referendum petitions were invalid). Thus, a challenge asserting that a petition failed to satisfy the formal requirements of subsec. (2) is very much an attempt "to contest the validity of an annexation under sub. (2)," and as such is barred by para. (11)(c).[5] *130 Notably, while a town may not challenge the sufficiency of the petition, the statute does not bar other parties, including affected electors or property owners, from doing so.
¶ 23 The Town also argues that, despite WIS. STAT. § 66.0217(11)(c), its claim that the City annexation ordinances violated the "rule of reason" survives. The rule of reason is a judicially created doctrine that allows courts to invalidate arbitrary or capricious exercises of a municipality's annexation authority.
*412 Town of Menasha v. City of Menasha , 170 Wis. 2d 181, 188-89, 488 N.W.2d 104 (Ct. App. 1992). The doctrine has three requirements: "(1) exclusions and irregularities in boundary lines must not be the result of arbitrariness; (2) some reasonable present or demonstrable future need for the annexed property must be shown; and (3) no other factors must exist which would constitute an abuse of discretion on the part of the municipality." Id. at 189, 488 N.W.2d 104.
¶ 24 The City argues that, given the enactment of WIS. STAT. § 66.0217(11)(c) and related provisions, the rule of reason is now largely defunct as it relates to a town's ability to challenge a direct annexation by unanimous approval. The City's position is that para. (11)(c) bars a town from attacking an annexation ordinance under the rule of reason, just as that provision bars any other challenge that does not concern the matters addressed under para. (6)(d)-namely contiguity and county parallelism. As a result, the City *131 contends the circuit court properly dismissed the Town's rule-of-reason claim.
¶ 25 We agree with the City that WIS. STAT. § 66.0217(11)(c) bars a town from bringing a general challenge to a direct annexation by unanimous approval under the rule of reason. The rule was established long before para. (11)(c) was enacted, see Town of Fond du Lac v. City of Fond du Lac , 22 Wis. 2d 533, 541, 126 N.W.2d 201 (1964), at a time when the annexation statute placed no limitation, other than a timeliness provision, upon a town's ability to contest an annexation, see WIS. STAT. § 66.021(10) (1961-62). Following para. (11)(c)'s enactment and subsequent amendment, a town is generally forbidden from bringing an action "on any grounds, whether procedural or jurisdictional, to contest the validity" of a direct annexation by unanimous approval. "Any grounds" include judicially adopted rules like the rule of reason, and thus the circuit court properly dismissed the Town's general challenge under the rule of reason.
¶ 26 However, the rule of reason is not wholly abrogated by the current version of WIS. STAT. § 66.0217(11)(c). Obviously, that provision places no limitations upon the types of challenges parties other than towns may bring. Even in cases brought by towns, the bar applies only to attempts to invalidate a direct annexation by unanimous approval under subsec. (2). Moreover, as we shall explain, there appears to be some overlap between the rule of reason's first factor and the contiguousness inquiry, the latter of which may still be challenged by a town under para. (11)(c). Thus, to the extent the arbitrariness of boundary lines *132 is relevant to a determination of contiguity, the rule of reason's first factor retains some vitality even under para. (11)(c).
¶ 27 In all, we conclude that under the current version of WIS. STAT. § 66.0217(11)(c), a town is generally barred from contesting the validity of an annexation. The sole exceptions to this rule are contained in subd. (6)(d)2., which permits a court action on either of the two issues identified in subd. (6)(d)1.-contiguity or county parallelism-provided the town first obtains a favorable finding from the Department on those matters. Thus, the circuit court properly dismissed all of the Town's claims except for its challenge to the annexed territory's contiguity to the City. We next consider whether the circuit court properly granted summary judgment on that issue.
II. The circuit court properly granted summary judgment to the City on the Town's contiguousness claim.
¶ 28 WISCONSIN STAT. § 66.0217(2) prohibits annexation "by a city or village under this subsection unless the territory to *413 be annexed is contiguous to the annexing city or village." "The term 'contiguous' is not statutorily defined and a substantial amount of case law has arisen with respect to the term's meaning and application." Town of Delavan v. City of Delavan , 176 Wis. 2d 516, 528, 500 N.W.2d 268 (1993). The Town argues this case law requires that we reverse the circuit court's grant of summary judgment in favor of the City and remand for an evidentiary hearing on the issue of contiguity. The City, on the other hand, argues the great weight of the case law generally requires only *133 that the annexed property "touches" an existing municipal border to satisfy statutory contiguity.
¶ 29 Annexation ordinances enjoy a presumption of validity, and the party attacking an ordinance's validity bears the burden of overcoming this presumption with proof that the ordinance is invalid. Town of Pleasant Prairie v. City of Kenosha , 75 Wis. 2d 322, 327, 249 N.W.2d 581 (1977). Whether a particular annexation satisfies the statutory contiguousness requirement is a question of law we review de novo. Town of Delavan , 176 Wis. 2d at 527, 500 N.W.2d 268.
¶ 30 Our analysis of the case law yields the following rules that apply to a town's challenge to contiguity in a direct annexation by unanimous approval under WIS. STAT. § 66.0217(2). Statutory contiguity is generally satisfied by a significant degree of physical contact between the annexed territory and the municipality's boundary, or when any separation between the two boundaries is de minimis. Town of Delavan , 176 Wis. 2d at 528-31, 500 N.W.2d 268. However, even if the properties are "touching," the boundaries and configuration of the annexed territory in relation to the existing municipal boundaries must not be arbitrary under the first prong of the rule of reason. Town of Mt. Pleasant v. City of Racine , 24 Wis. 2d 41, 45-46, 127 N.W.2d 757 (1964).
¶ 31 In a direct annexation, property owners and electors, not the municipality, usually decide for themselves what the boundaries of the annexed area should be. Therefore, a direct annexation by unanimous approval is generally not susceptible to an arbitrariness *134 challenge. Town of Lyons , 56 Wis. 2d at 338, 202 N.W.2d 228. However, the annexation may nonetheless be attacked on arbitrariness grounds if the annexation is of an exceptional shape, Town of Menasha , 170 Wis. 2d at 191-92, 488 N.W.2d 104, or if the annexing municipality is itself a petitioner or the "real controlling influence" behind the annexation, Town of Pleasant Prairie , 75 Wis. 2d at 339-40, 249 N.W.2d 581.
¶ 32 We begin with the meaning of "contiguous" under WIS. STAT. § 66.0217(2). Again, there is no single, precise definition of the term. Town of Delavan , 176 Wis. 2d at 528, 500 N.W.2d 268. We have relied on various dictionary definitions. See Town of Campbell v. City of La Crosse , 2001 WI App 201, ¶ 11, 247 Wis. 2d 946, 634 N.W.2d 840.[6] According to our supreme court, "one may discern a trend in Wisconsin's courts to require at a minimum some significant degree of physical contact between the properties in question." Town of Delavan , 176 Wis. 2d at 528, 500 N.W.2d 268 ; see also *414 Town of Campbell , 247 Wis. 2d 946, ¶ 13, 634 N.W.2d 840 ("Whatever else it means, 'contiguous' plainly includes properties that are in physical contact....").
¶ 33 However, the absence of physical touching does not necessarily destroy contiguity. Our supreme court has held that annexed territory was "close enough" to the city limits despite a twenty-three-foot *135 gap where a public road was located between the two. Town of Lyons , 56 Wis. 2d at 336, 202 N.W.2d 228. Further, the court in Town of Delavan declined to engage in a "hypertechnical application of the requirement for contiguity." Town of Delavan , 176 Wis. 2d at 530-31, 500 N.W.2d 268. Instead, the supreme court concluded that although a 400-foot stretch of water destroyed contiguity with respect to a small uninhabited and unattached peninsula, the lack of contiguity was de minimis and, as such, "a trivial matter with which we shall not be concerned." Id. at 529-31, 500 N.W.2d 268.
¶ 34 The annexed territory here plainly satisfies WIS. STAT. § 66.0217(2) 's physical contiguousness requirements. Phase one borders the City for approximately three-quarters of one mile, thereby giving physical contiguity to the entirety of the annexed area. Given these undisputed facts, we conclude the City was entitled to summary judgment on the matter of physical contiguity. There was a "significant degree of physical contact" so as to satisfy the statutory requirements.
¶ 35 The Town argues this contact does not end the contiguousness inquiry, for even if the annexed territory is physically contiguous to the annexing municipality, an annexation may be declared invalid on the grounds of arbitrariness. The Town primarily relies upon Town of Mt. Pleasant as arguably being analogous to the present case. There, the 145-acre annexed area was located to the southwest of the then-existing city limits and was connected to the city "only by a corridor approximately 1,705 feet long, and varying in width from approximately 306 feet to 152 feet." Town of Mt. Pleasant , 24 Wis. 2d at 43, 127 N.W.2d 757. The town *136 challenged this configuration as lacking contiguity, and the supreme court agreed. Id. at 45, 47, 127 N.W.2d 757.
¶ 36 Using the rule of reason's first factor as the standard-i.e., whether the boundaries were fixed in an arbitrary or capricious fashion, or in a way that constituted an abuse of discretion-the Town of Mt. Pleasant court held as follows:
Shoestring or gerrymander annexation is not a rare phenomenon. The tendency of subdividers to reach far out into the countryside for vacant land, and their desire to attach it to the city of services, is natural; however, this can lead to annexations which in reality are no more than isolated areas connected by means of a technical strip a few feet wide . Such a result does not coincide with legislative intent, and tends to create crazy-quilt boundaries which are difficult for both city and town to administer.
Id. at 46, 127 N.W.2d 757 (citations omitted) (emphasis added).
¶ 37 In dissent, Justice Wilkie, joined by Justice Fairchild, criticized the court for "engraft[ing] onto the statute the additional requirement that a proposed annexation is subject to review under the 'rule of reason' to determine whether the proposed boundary lines are 'reasonable in the sense that they were not fixed arbitrarily, capriciously, or in abuse of discretion.' " Id. at 47-48, 127 N.W.2d 757 (Wilkie, J., dissenting). Further, Justice Wilkie questioned whether an annexation ordinance adopted at the behest of petitioning electors and property owners could ever be attacked based on alleged arbitrariness in the drawing of the boundaries.
*415 Id. at 48, 127 N.W.2d 757 (Wilkie, J., dissenting) (observing that in a direct annexation, the city or village was required to "consider proposed annexation as presented by petitioners on a 'take it or leave it' basis").
*137 ¶ 38 As even the Town admits, the Town of Mt. Pleasant rule "has been somewhat modified over time." As it relates to direct annexations by unanimous approval, Justice Wilkie's dissent has largely won the day. In Town of Lyons , our supreme court held: "Where property owners initiate direct annexation, we do not think the municipality may be charged with arbitrary action in the drawing of boundary lines." Town of Lyons , 56 Wis. 2d at 338, 202 N.W.2d 228 ; accord Town of Medary , 88 Wis. 2d at 114, 277 N.W.2d 310 ; Town of Pleasant Prairie , 75 Wis. 2d at 339, 249 N.W.2d 581 ; Town of Lafayette v. City of Chippewa Falls , 70 Wis. 2d 610, 625, 235 N.W.2d 435 (1975). Consequently, although alleged arbitrariness in the boundaries or configuration of annexed property seemingly remains fair game for a contiguousness review, the circumstances under which this factor may be invoked to challenge a direct annexation by unanimous approval have been significantly circumscribed. See Town of Baraboo v. Village of W. Baraboo , 2005 WI App 96, ¶ 22, 283 Wis. 2d 479, 699 N.W.2d 610 (recognizing that subsequent case law has "essentially remove[d] the first requirement of the rule of reason from consideration in owner-petitioned annexations").
¶ 39 More specifically, there appear to be only two circumstances under which the alleged arbitrariness of an annexation's boundaries may still be challenged as violating WIS. STAT. § 66.0217(2) 's contiguousness requirement. The first is "where the annexing municipality itself is one of the petitioning landowners or where the municipality otherwise is shown to be the real controlling influence in the proceedings." Town of Pleasant Prairie , 75 Wis. 2d at 339-40, 249 N.W.2d 581. Second, a town may challenge an annexation as creating " 'gerrymandered' or 'crazy quilt' municipal boundaries, even when *138 the annexation is initiated by a private landowner who sets the boundaries." Town of Medary , 88 Wis. 2d at 115-16, 277 N.W.2d 310.[7]
¶ 40 The Town argues both circumstances exist here. First, it contends the City was the "real controlling influence" behind the annexation's design and configuration, such that it-not the property owners-should be charged with any arbitrariness in the boundaries. " 'Influencing' the proceedings, in this context, means more than providing mere technical assistance or recommendations to the petition signers; rather, it means conduct by which the annexing authority dominates the petitioners so as to have effectively selected the boundaries." Town of Menasha , 170 Wis. 2d at 192, 488 N.W.2d 104 (citation omitted). The evidence the Town cites in *416 support of its "real controlling influence" theory is insufficient to create a triable issue as to whether that standard was satisfied.
¶ 41 The Town contends it is "undisputed that the boundaries were not established by the annexation *139 petitioners," but rather "by the City ... and Whitehall Sand and Rail." In truth, there is no evidence that would support a determination that the City so dominated the annexation proceedings that it effectively selected the annexation boundaries. The City's mayor testified that Whitehall Sand and Rail approached the City about annexing property for a sand mine and transload facility in 2011 or 2012. At that point, the City advised Whitehall Sand and Rail that it would have to persuade property owners to go along with the annexation. Between 2013 and 2015, Whitehall Sand and Rail entered into purchase agreements with the annexation petitioners. The purchase agreements variously required that the property be annexed or that the property owner support annexation for the transaction to be finalized.
¶ 42 Both the City's mayor and its administrator testified that Whitehall Sand and Rail and the property owners determined what property was included in the proposed annexation territory. The City's mayor testified that at no time did the City solicit or encourage property owners to include their property in the proposed annexation. It appears undisputed that Whitehall Sand and Rail selected the properties to be included and then identified them on a plat map for the City.
¶ 43 The only arguable evidence of any City involvement in setting the boundaries occurred after the annexation petitions had been received. At that time, the mayor objected to the exclusion of certain property in phase one, which would have created an "island" that was, in the mayor's opinion, impermissible. See Town of Fond du Lac , 22 Wis. 2d at 541-42, 126 N.W.2d 201 (holding that the creation of an island of town land within the annexed territory for the purpose of excluding *140 electors opposed to the annexation was arbitrary). But this accomplished little more than advising Whitehall Sand and Rail of the state of the law. Even the Town admits that Whitehall Sand and Rail, not the City, discussed the matter with the property owners and revised the annexation area to include additional properties. The technical assistance the City provided does not demonstrate "the petitioners [were] puppets dancing on a municipal string." See Town of Waukesha v. City of Waukesha , 58 Wis. 2d 525, 530, 206 N.W.2d 585 (1973). Our supreme court has refused to invalidate an annexation under similar circumstances to the one here. See Town of Pleasant Prairie , 75 Wis. 2d at 340, 249 N.W.2d 581 (upholding annexation where, at landowner's request, the city suggested areas for inclusion in the annexed territory based on legal requirements and need for utility services, and also provided forms to assist with drafting).
¶ 44 The Town observes the City had an economic incentive to support annexation. Yet, the mere fact that a municipality benefits from an owner-initiated annexation does not alone demonstrate control over the process so as to make the boundaries effectively selected by the municipality. See Town of Lafayette , 70 Wis. 2d at 625, 235 N.W.2d 435 ; Town of Waukesha , 58 Wis. 2d at 530, 206 N.W.2d 585. By virtue of Whitehall Sand and Rail's purchase offers, the petitioning landowners had an incentive to want their land annexed. As such, they appear to have "acted in light of their desires and their best interests as they saw them and their right to do so, statutorily provided, *417 is not to be disregarded." Town of Lafayette , 70 Wis. 2d at 631, 235 N.W.2d 435.
¶ 45 There also is no evidentiary basis to find Whitehall Sand and Rail acted as an extension of the *141 City in this case. Indeed, the Town-despite attempting to combine the two entities in claiming it is "undisputed" that they, together, selected the boundaries-develops no such argument. There is no evidence, and no reasonable inference from the evidence presented, that the City controlled the annexation process. Negotiations on a development agreement between the City and Whitehall Sand and Rail did not commence until after the annexation, and in fact no development agreement had been signed as of 2016.
¶ 46 As to the second possible basis for challenging the arbitrariness of this annexation's boundaries, we conclude the annexed territory here was not of an "exceptional shape" demonstrating shoestring, gerrymandered or crazy-quilt municipal boundaries. The Town states this court "can draw its own conclusions regarding the arbitrariness of the annexed properties by merely looking at the four annexation maps." The alleged "exceptional shape" of the annexed territory is not obvious to us. Indeed, the general shape appears similar to an area of the City's existing territory extending to the southwest. We do not perceive a "crazy quilt" here, nor does the shape appear to us to have created an obviously gerrymandered "island." While the shape of the annexed territory is admittedly irregular, mere irregularity is insufficient to demonstrate arbitrariness. Town of Medary , 88 Wis. 2d at 117, 277 N.W.2d 310.[8] Arm-like extensions from the municipal boundary *142 , such as the one here, do not necessarily demonstrate an arbitrary shape. See Town of Baraboo , 283 Wis. 2d 479, ¶ 23, 699 N.W.2d 610.
¶ 47 To elaborate, our understanding of existing law is that, to the extent an arbitrariness/exceptional shape analysis still applies to owner-initiated annexations, see supra n.7, the analysis is designed to protect against only the most egregious configurations. Specifically, annexations cannot add territory that represents an "island"-either in actuality or in essence-apart from the municipality's existing territory. See, e.g. , Town of Mt. Pleasant , 24 Wis. 2d at 46, 127 N.W.2d 757 (discussing the need to avoid "annexations which in reality are no more than isolated areas connected by means of a technical strip a few feet wide"). All of the various, colorful metaphors used to describe what constitutes an arbitrary configuration seem concerned with this type of extreme result. So long as no part of the annexed territory is so narrow as to effectively create such an island, the petitioners' choice of boundaries is not unreasonable.
¶ 48 A comparison of the annexed area in this case to the annexed area in Town of Mt. Pleasant is instructive. The 145-acre annexation there was connected to the city by a long, narrow corridor approximately 1,700 feet long that varied in width between about 150 and 300 feet. Id. at 43, 127 N.W.2d 757. Moreover, one of the narrowest *418 points was located precisely where the annexed *143 territory abutted the annexing municipality. Id . at 43-44, 127 N.W.2d 757. The court apparently had no trouble concluding this was a prohibited "shoestring" configuration, whereby the annexed territory included "isolated areas connected by means of a technical strip a few feet wide." Id. at 46, 127 N.W.2d 757. Here, by contrast, the area the Town describes as the "balloon"-phase four-consists of 300 acres, and is notably smaller in size than the remainder of the annexed property, which together totals nearly 950 acres. As the Town's chairperson conceded, all phases of the annexed property are to be used for mining operations, and the Town itself notes phases one through three are intended for use as a dry plant and rail transload facility, a conveyor, and a wet plant and mine, respectively. As a result, we cannot conclude the so-called "string" territory was included in the annexation merely as a means to reach the alleged "balloon" territory.
¶ 49 Further, the only portion of the annexed territory here arguably resembling a "string" is in phase two. But even that phase consists of nearly 300 acres and, most importantly, is over 1,000 feet wide at its narrowest point. Phase two was initially even larger, but the Town's chairperson requested that Whitehall Sand and Rail remove two properties from the annexation petition, those of the Town clerk and treasurer, because the chairperson did not want to lose those staff members. Under these circumstances, we conclude as a matter of law that the annexation here was not of an "exceptional shape" warranting further scrutiny.
CONCLUSION
¶ 50 In sum, we conclude that the Town is limited by WIS. STAT. § 66.0217(11)(c) to challenging the *144 annexed territory's contiguity to the City. The circuit court therefore properly granted the City's motion to dismiss all but that claim. As to the contiguousness claim, the annexation satisfies physical contiguity. Because this is an owner-initiated annexation, we will not review the alleged arbitrariness of the boundaries unless the City was the "real controlling influence" behind the annexation or unless the annexed territory is of an exceptional shape. The Town has shown neither to be the case here. Accordingly, the circuit court properly granted the City's summary judgment motion on the Town's contiguousness claim.
By the Court. -Judgment affirmed.

This appeal was advanced for decision under Wis. Stat. Rule 809.20 (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Whitehall Sand and Rail filed a motion to intervene in this lawsuit, which was denied.

This method was apparently at the request of the Whitehall Electric Utility, which wanted to assure it would be able to provide electricity to Whitehall Sand and Rail. The ordinances were passed on the same day, and the parties agree they are to be analyzed as if they constituted a single annexation.

We note that the 2012 amendments to Wis. Stat. § 66.0217 were already in effect by the time we decided the appeal in Darboy Joint Sanitary District No. 1 v. City of Kaukauna , 2013 WI App 113, 350 Wis. 2d 435, 838 N.W.2d 103. See id. , ¶ 15 n.4. However, the ordinance at issue in that case was adopted in October 2010, and the lawsuit was filed in January 2011, both well in advance of the legislation's March 21, 2012 enactment date. See id. , ¶¶ 2, 4. As a result, we applied the 2009-10 version of the Wisconsin Statutes. Id. , ¶ 1 n.1.

We note that contiguity is also a Wis. Stat. § 66.0217(2) requirement. If the Town's argument were correct regarding subsec. (2) as containing "threshold" requirements that are always subject to challenge, it would not have been necessary for the legislature to carve out an exception to para. (11)(c) to allow towns to challenge contiguity. Thus, our interpretation, unlike the Town's, gives effect to every part of the statute. See State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").
Additionally, the Town suggests that the type of annexation here can be reclassified as a direct annexation by one-half approval under Wis. Stat. § 66.0217(3)(a). As the City observes, a petition for direct annexation by unanimous approval cannot be reclassified as a one-half-approval petition because they are subject to different notice requirements. Compare Wis. Stat. § 66.0217(2)with § 66.0217(3)(a) & (4). Rather, the petitioners must decide which subsection to proceed under at the outset, and then the annexing authority must make a determination as to whether the requirements have been satisfied when acting upon those petitions.

For example, we have relied on the following definitions: "touching along boundaries often for considerable distances"; "next or adjoining with nothing similar intervening"; "NEARBY, CLOSE: not distant"; and "CONTINUOUS, UNBROKEN, UNINTERRUPTED: touching or connected throughout." Town of Campbell v. City of La Crosse , 2001 WI App 201, ¶ 11, 247 Wis. 2d 946, 634 N.W.2d 840 (quoting Webster's Third New Int'l Dictionary 492 (unabr. ed. 1993) ).

We acknowledge that in Town of Campbell v. City of La Crosse , 2003 WI App 247, 268 Wis. 2d 253, 673 N.W.2d 696, we expressed skepticism as to whether the general shape of the annexed territory remained susceptible to challenge in an owner-initiated annexation. Id. , ¶ 27 & n.7. Consequently, we called on our supreme court to clarify whether Town of Mt. Pleasant v. City of Racine , 24 Wis. 2d 41, 127 N.W.2d 757 (1964), remained valid given the subsequent case law. Town of Campbell , 268 Wis. 2d 253, ¶ 27 n.7, 673 N.W.2d 696. Nonetheless, despite our professed skepticism in Town of Campbell , we appear to have subsequently analyzed a direct annexation's shape under the rule of reason in Town of Baraboo v. Village of W. Baraboo , 2005 WI App 96, ¶¶ 21-22, 283 Wis. 2d 479, 699 N.W.2d 610. We therefore assume an annexation of an "exceptional shape" may trigger further scrutiny for arbitrariness, but we renew our call for the supreme court to clarify the law in this area.

The Town also argues the annexation divides certain properties that were originally subject to a single legal description, such that those properties are now partly inside the annexed territory and partly outside the annexation boundaries. Yet, in a direct annexation by unanimous approval, such matters are left to the discretion of the petitioning landowners, who have the right to act in their best interests as they see them. See Town of Campbell , 268 Wis. 2d 253, ¶ 21, 673 N.W.2d 696. As such, their decision to include or exclude certain portions of their property does not per se demonstrate arbitrariness. See Town of Baraboo , 283 Wis. 2d 479, ¶¶ 21-22, 699 N.W.2d 610.