# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP2162 |

| | |
|---|---|
| COMPLETE TITLE: | Town of Wilson,<br>      Plaintiff-Appellant,<br>   v.<br>City of Sheboygan,<br>      Defendant-Respondent. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | February 14, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 19, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Sheboygan |
|   JUDGE: | Daniel J. Borowski |

| | |
|---|---|
| JUSTICES: | |

DALLET, J., delivered the majority opinion for a unanimous Court with respect to Parts I., III.C., and III.D., and the majority opinion of the Court with respect to Parts II., III.A., III.B., and IV., in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion, in which KELLY, J., joined. HAGEDORN, J., filed a concurring opinion.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-appellant, there were briefs filed (in the court of appeals) by *Michael D. Huitink* and *Sorrentino Burkert Risch LLC,* Brookfield. There was an oral argument by *Michael D. Huitink*.

For the defendant-respondent, there was a brief filed (in the court of appeals) by *H. Stanley Riffle* and *Municipal Law & Litigation Group, S.C.,* Waukesha. There was an oral argument by *H. Stanley Riffle*.

For amicus Wisconsin Towns Association, a brief was filed by *Joseph Ruth*, Shawano.

For joint amici League of Wisconsin Municipalities and NAIOP – Wisconsin there was a brief filed by *Julie M. Gay* and *Law Office of Julie M. Gay*, Waukesha, *Thomas D. Larson*, Madison, and *Claire Silverman*, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP2162
(L.C. No. 2017CV490)

STATE OF WISCONSIN      :      IN SUPREME COURT

**Town of Wilson,**

    **Plaintiff-Appellant,**

    **v.**

**City of Sheboygan,**

    **Defendant-Respondent.**

**FILED**

**FEB 14, 2020**

Sheila T. Reiff
Clerk of Supreme Court

DALLET, J., delivered the majority opinion for a unanimous Court with respect to Parts I., III.C., and III.D., and the majority opinion of the Court with respect to Parts II., III.A., III.B., and IV., in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion, in which KELLY, J., joined. HAGEDORN, J., filed a concurring opinion.

APPEAL from an order of the Circuit Court for Sheboygan County, Daniel J. Borowski, Judge. *Affirmed.*

¶1 REBECCA FRANK DALLET, J. Kohler Company sought to convert 247 acres of land located in the Town of Wilson into a world championship golf course. After determining that the golf course development would not come to fruition if the land remained within the Town's boundaries, Kohler successfully petitioned for annexation to the City of Sheboygan. In response, the Town filed

a declaratory judgment action alleging that the annexation was "arbitrary, capricious, non-contiguous, an abuse of discretion, and otherwise procedurally and substantively non-compliant with [the City's] annexation authority under Chapter 66, Wis. Stats, and existing Wisconsin case[]law." The City moved for partial summary judgment regarding the annexation petition's compliance with the population certification requirement in Wis. Stat. § 66.0217(5)(a) (2017-18), which was granted.[1] The circuit court ultimately conducted a bench trial and concluded that the annexation satisfied the statutory contiguity requirement and the "rule of reason."[2] The circuit court further concluded that the annexation petition fully satisfied the procedural requirements of § 66.0217. Consequently, the circuit court dismissed the action in full.

¶2 On bypass[3] from the court of appeals, the Town asks us to review whether: (1) the annexation satisfies the statutory contiguity requirement; (2) the annexation satisfies the rule of reason; (3) the annexation petition strictly complied with the signature requirements in Wis. Stat. § 66.0217(3); and (4) the annexation petition strictly complied with the population certification requirement in § 66.0217(5)(a). We conclude that

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[2] Judge Daniel J. Borowski of the Sheboygan County Circuit Court presided.

[3] The Town's petition to bypass was filed pursuant to Wis. Stat. § (Rule) 809.60.

the annexation is contiguous and satisfies the rule of reason.  We also conclude that the annexation petition strictly complied with §§ 66.0217(3) and (5)(a).  Therefore, we affirm the circuit court.

## I.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶3  For nearly 80 years Kohler has owned 247 acres of undeveloped land abutting Lake Michigan located within the Town's boundaries.  In March 2014, Kohler submitted an application with the Town for a conditional use permit to develop the land into a world championship golf course.  After Kohler's plan went public, there was immediate opposition to the proposed development by the Town's citizens.  The opposition centered on environmental concerns, deforestation, and perceived impacts to residential wells.  By 2015, three of the five members of the Town Board were known to oppose the development, decreasing the likelihood that Kohler's application would be approved.

¶4  Due to unfolding Town Board opposition and concerns about the Town's ability to provide adequate water and fire services to the proposed development,[4] Kohler approached the City about the possibility of annexing its property and adjacent lands. The City was interested in Kohler's proposal as it "had historically targeted the lands within the annexation, including the Kohler Land, for future City expansion, development and

---

[4] Kohler was concerned that the Town's inability to provide a municipal water source would negatively impact the golf course development based on:  (1) insufficient water for the golf course operations; (2) exposure to well damage claims from neighboring landowners; and (3) a potentially inadequate water source for the Town's volunteer fire department in the event of a fire.

economic growth as a part of the City's 2011 Comprehensive Plan." The City was also facing a substantial need for housing, which was stunting economic growth. Annexation would allow the City to immediately address its housing needs by developing the land adjacent to Kohler's property. It was a mutually beneficial arrangement for Kohler and the City: annexation was a means for Kohler to achieve its goal of developing its land into a golf course and for the City to achieve its goal of economic growth.

¶5 Kohler independently designed the boundaries of the territory subject to the proposed annexation, without the City's assistance. To increase its size and shape, Kohler included a large amount of state land in its proposal. Kohler also purchased several of the properties located within the territory. Pursuant to Kohler's design, the border between the City and the first parcel of the territory spans approximately 650 feet in width. The territory proceeds in a southeasterly direction and varies in size from 1,450 feet wide at certain points to 190 feet wide before expanding to the proposed golf course development. The map of the annexation is attached as an appendix to this opinion.

¶6 Kohler initiated the annexation process in April 2017 by publishing a notice in the Sheboygan Press and sending a "Request for Annexation Review" to the Department of Administration ("DOA"). Kohler then circulated a "Petition for Annexation by One-Half Approval" (the "Petition") in accordance with Wis. Stat. § 66.0217(3)(a).[5] The Petition stated that its purpose was to

---

[5] Wisconsin Stat. § 66.0217(3)(a)1. provides:

4

"make City of Sheboygan services available to the territory and to ready the territory for development consistent with the City of Sheboygan's 2011 Comprehensive Plan." According to the Petition, the population of the territory subject to the proposed annexation included six adults and three children. Kohler obtained five signatures for the Petition from owners representing over one-half of the real property in assessed value within the territory, as required by § 66.0217(3)(a)1.b.[6]

¶7    DOA issued a nonbinding recommendation in favor of the annexation and found it in the "public interest," as defined in Wis. Stat. § 66.0217(6)(c).[7]  DOA determined that the annexation

---

(a) *Direct annexation by one-half approval.* A petition for direct annexation may be filed with the city or village clerk if it has been signed by either of the following:

1. A number of qualified electors residing in the territory subject to the proposed annexation equal to at least the majority of votes cast for governor in the territory at the last gubernatorial election, and either of the following:

    a. The owners of one-half of the land in area within the territory.

    b. The owners of one-half of the real property in assessed value within the territory.

[6] The parties stipulated that five signatures would be a majority of qualified electors.

[7] DOA has a mandatory role to play in annexations "within a county having a population of 50,000 or more."  Wis. Stat. § 66.0217(6)(a).  Section 66.0217(6)(c) states that the "public interest" is determined after considering:

1. Whether the governmental services, including zoning, to be supplied to the territory could clearly be better

5

was contiguous to the City "via a quarter-quarter sized parcel of city-owned territory approximately 650-feet wide."

¶8   Shortly thereafter, the City's Common Council adopted two ordinances:  one annexing the territory included in the Petition and another zoning the land as suburban residential. Additionally, the Common Council approved a pre-annexation agreement between Kohler and the City.[8]

¶9   The Town filed suit against the City in the circuit court and moved for a temporary injunction, which was denied.  The parties filed cross-motions for summary judgment regarding the validity of the annexation pursuant to Wis. Stat. ch. 66 and the rule of reason.  The circuit court denied summary judgment based on disputed issues of material fact regarding statutory

---

supplied by the town or by some other village or city whose boundaries are contiguous to the territory proposed for annexation which files with the circuit court a certified copy of a resolution adopted by a two-thirds vote of the elected members of the governing body indicating a willingness to annex the territory upon receiving an otherwise valid petition for the annexation of the territory.

2. The shape of the proposed annexation and the homogeneity of the territory with the annexing village or city and any other contiguous village or city.

[8] As the circuit court noted, the pre-annexation agreement reflected the "mutual interest between Kohler and the City in the proposed annexation" and was negotiated between City officials and Kohler before Kohler filed the Petition.  The agreement established mutual obligations of the City and Kohler as it related to the proposed annexation.  For example, the City agreed to extend water utility to the golf course property, as well as provide police, fire, and emergency services to the property.  Kohler agreed to, among other things, utilize the City's municipal water service for all improvements on the property within three years of development.

contiguity, the rule of reason, and the Petition's compliance with the procedural requirements set forth in Wis. Stat. § 66.0217. The circuit court subsequently granted the City's partial motion for summary judgment as to the Petition's compliance with the population certification requirement in § 66.0217(5)(a).[9]  The case proceeded to a bench trial.  The trial centered on the Town's claim that the annexation was not contiguous and violated the rule of reason.

¶10  In November 2018, the circuit court issued a written decision concluding that:  (1)  the annexation satisfied the statutory contiguity requirement in Wis. Stat. § 66.0217(3); (2) the annexation did not violate the rule of reason; and (3) the Petition fully complied with the procedural requirements set forth in § 66.0217.[10]  Accordingly, the circuit court dismissed the Town's declaratory judgment action in full.  The Town petitioned this court to bypass the court of appeals, which we granted.

II.  STANDARD OF REVIEW

¶11  The legislature has conferred broad authority on cities and villages to annex unincorporated lands under Chapter 66 of the

---

[9] The City, with the circuit court's permission, filed a subsequent motion for partial summary judgment on this issue.

[10] The circuit court "incorporate[d] by reference" its May 2018 written decision on the City's motion for partial summary judgment and noted that the Town did not raise any new issues at trial regarding whether the Petition complied with the procedural requirements of Wis. Stat. § 66.0217.  It concluded that the Petition "complied with the procedural requirements of § 66.0217 . . . [and it] was properly noticed and included the signatures of five of the six qualified electors and the owners of 91% of the territory measured by assessed value."

Wisconsin Statutes. See Town of Pleasant Prairie v. City of Kenosha, 75 Wis. 2d 322, 326-27, 249 N.W.2d 581 (1977). Annexation ordinances have long enjoyed a presumption of validity. Id.; see also Town of Lafayette v. City of Chippewa Falls, 70 Wis. 2d 610, 618, 235 N.W.2d 435 (1975). A party challenging an annexation ordinance bears the burden of overcoming this presumption by demonstrating that the circuit court's findings are contrary to the great weight and clear preponderance of the evidence. Town of Waukechon v. City of Shawano, 53 Wis. 2d 593, 596, 193 N.W.2d 661 (1972).

¶12 In order to resolve the Town's contention that the annexation is not contiguous and that the Petition failed to comply with the procedural requirements set forth in Wis. Stat. § 66.0217, we engage in statutory interpretation. Statutory interpretation is a question of law that we review de novo. Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC, 2018 WI 19, ¶28, 380 Wis. 2d 60, 908 N.W.2d 797.

¶13 We also review the circuit court's application of the rule of reason, a doctrine designed to determine whether the power delegated to cities and villages under Chapter 66 has been abused under the facts and circumstances of a given case. See Town of Pleasant Prairie, 75 Wis. 2d at 326-27. To pass muster under the rule of reason, an annexation must satisfy three requirements:

> (1) exclusions and irregularities in boundary lines must not be the result of arbitrariness; (2) some reasonable present or demonstrable future need for the annexed property must be shown; and (3) no other factors must exist which would constitute an abuse of discretion on the part of the municipality.

8

*Town of Menasha v. City of Menasha*, 170 Wis. 2d 181, 189, 488 N.W.2d 104 (Ct. App. 1992).  A failure to satisfy any one of the prongs renders an annexation arbitrary, capricious, and invalid. *Town of Lafayette*, 70 Wis. 2d at 625.

¶14  We accept the circuit court's factual determinations regarding the rule of reason unless they are clearly erroneous. *Town of Baraboo v. Village of West Baraboo*, 2005 WI App 96, ¶19, 283 Wis. 2d 479, 699 N.W.2d 610.  "Whether the undisputed facts meet the legal standards of the rule of reason presents a question of law, which we review de novo . . . ."  *Id.*

¶15 Lastly, we review the circuit court's grant of summary judgment as to the Petition's compliance with the population certification requirement in Wis. Stat. § 66.0217(5)(a) using the same methodology as the circuit court.  *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987).  Summary judgment shall be granted where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Wis. Stat. § 802.08(2).

III.  ANALYSIS

¶16  We first address the Town's claim that the annexation does not meet the statutory contiguity requirement, as set forth in Wis. Stat. § 66.0217(3) and interpreted by this court in *Mt. Pleasant I* and its progeny.  *Town of Mt. Pleasant, Racine Cty. v. City of Racine, Racine Cty.*, 24 Wis. 2d 41, 127 N.W.2d 757 (1964) ("*Mt. Pleasant I*").  We next discuss the rule of reason and determine whether it voids the annexation at issue in this case.

Finally, we consider the Town's procedural challenges to the Petition as they relate to the signature requirement in § 66.0217(3) and the population certification requirement in § 66.0217(5)(a).

### A. Contiguity

¶17 The Town asserts that the annexed territory is not contiguous to the City and therefore the annexation ordinance should be invalidated. Wisconsin Stat. § 66.0217(3) allows property owners to annex territory that is "<u>contiguous</u> to a city or village."[11] (Emphasis added.) "Contiguous" should be construed according to its "common and approved usage unless a different definition has been designated by the statutes." <u>State v. Curiel</u>, 227 Wis. 2d 389, 404, 597 N.W.2d 697 (1999); <u>see</u> also Wis. Stat. § 990.01(1). The term "contiguous" is not defined in Chapter 66 of the Wisconsin Statutes.

¶18 To determine the definition of "contiguous" as it relates to Wis. Stat. § 66.0217(3), we look to the substantial amount of case law that addresses the term's meaning and application. "Although finding a single, precise definition of 'contiguous' is difficult, one may discern a trend in Wisconsin's courts to require at minimum <u>some significant degree of physical contact</u> between the properties in question." <u>Town of Delavan v.</u>

---

[11] Along with the statutory contiguity requirement, Wis. Stat. § 66.0217 outlines the procedures related to preparation, notice, circulation, and filing of such petitions. Direct annexation by one-half approval, the procedure followed by Kohler, requires strict compliance. § 66.0217(3); <u>see</u> <u>Town of Burke v. City of Madison</u>, 225 Wis. 2d 615, 625, 593 N.W.2d 822 (Ct. App. 1999).

*City of Delavan*, 176 Wis. 2d 516, 528, 500 N.W.2d 268 (1993) (emphasis added) (citing *City of Waukesha v. Salbashian*, 128 Wis. 2d 334, 352 n.5, 382 N.W.2d 52 (1986)) (referencing one dictionary definition of contiguous: "touching along boundaries often for considerable distances" but stating that "[f]or the purposes of this decision, we define contiguous as touching or adjoining."); *Town of Waukechon*, 53 Wis. 2d at 597 (describing the proposed annexation as "contiguous to the city for its entire 575-foot width"). We recognize that each case is fact-specific, and therefore we decline to define contiguity using a numerical threshold.

¶19 We have rejected the adoption of a broader definition of contiguous that includes territory near to, but not actually touching, a municipality. See *Town of Delavan*, 176 Wis. 2d at 528-29 (declining the City's request to adopt "a broader definition of 'contiguous' that includes territory near to, but not actually touching, the annexing municipality," as it would "place distant lakeshore property owners at risk of being annexed by neighboring municipalities"). However, we acknowledge that there can be situations where contiguous "does not always mean the land must be touching." *Town of Lyons v. City of Lake Geneva*, 56 Wis. 2d 331, 336, 202 N.W.2d 228 (1972). For example, in *Town of Lyons*, we determined that a 23-foot public road separating the City limits from the boundary of the annexed land was "close enough to the city limits to be contiguous" because "a public road should not destroy the concept of 'contiguous' regardless of ownership." *Id.*; see also *Town of Delavan*, 176 Wis. 2d at 530 (recognizing that a

11

1.5-acre parcel of land separated from the land sought to be annexed by 400 feet of water was not contiguous, but that the "trivial lack of contiguity [was] insufficient to void the annexation" given the "unique facts of th[e] particular case").

¶20 The Town presents side-by-side maps to support its assertion that the annexation in this case is "virtually identical" to the annexation invalidated in Mt. Pleasant I, 24 Wis. 2d 41. In Mt. Pleasant I, a private party sought to connect its land to the Racine city limits by a corridor approximately 1,705 feet long, varying in width from approximately 152 to 306 feet. Id. at 43. The land physically touched the Racine city limits only at the southwest corner by a 153-foot-wide corridor. Id. at 43-44. The Mt. Pleasant I court focused its discussion of contiguity on the validity of "corridor" or "strip" annexations, intended by developers to attach land to a city to obtain services, but which "in reality are no more than isolated areas connected by means of a technical strip a few feet wide." Id. at 45-46.

¶21 Because of the lack of Wisconsin authority regarding the validity of these annexations, the Mt. Pleasant I court looked to out-of-state authority for guidance. Id. at 45. Four of the five out-of-state cases cited in Mt. Pleasant I involved voided annexations with a border of less than 100 feet between the annexing municipality and the annexed territory. See Potvin v. Village of Chubbuck, 284 P.2d 414, 415 (Idaho 1955) (corridor strip was five feet wide); Clark v. Holt, 237 S.W.2d 483, 484 (Ark. 1951) (border was 50 feet wide); State ex rel. Danielson v. Village of Mound, 48 N.W.2d 855, 858-59 (Minn. 1951) ("100-foot wide railroad

12

right of way which extends about five-eighths of a mile"); State ex rel. Fatzer v. Kansas City, 222 P.2d 714, 720 (Kan. 1950) (of the land annexed, "only 82 feet touches the city limits of Kansas City").[12]

¶22 Here, unlike in Mt. Pleasant I, the annexed territory shares a common boundary with the City of 650 feet, which is more than only a "technical strip a few feet wide."[13] The degree of physical contact between the City and the territory is over four times that of the border connecting the City with the annexed territory in Mt. Pleasant I and involves a significant degree of physical contact between the properties. See Town of Waukechon, 53 Wis. 2d at 597 ("The Town of Waukechon attempts to analogize [Mt. Pleasant I] with the instant action. We see no similarity between the cases. The area of proposed annexation herein is rectangular and is contiguous to the city for its entire 575-foot width."); see also Town of Lyons, 56 Wis. 2d at 336 ("In the Mt. Pleasant Case, we held land was not contiguous because only a small part of it touched the city.") Based on the facts of this case,

---

[12] The fifth case, People ex rel. Village of Worth v. Ihde, 177 N.E.2d 313 (Ill. 1961), involved annexation to a highway which also likely involved a border of less than 100 feet.

[13] The City, DOA, and the circuit court all cited Mt. Pleasant II in their discussion of contiguity, despite the fact that the contiguity of the annexation was not at issue in that case. Town of Mt. Pleasant v. City of Racine, 28 Wis. 2d 519, 524, 137 N.W.2d 656 (1965) ("Mt. Pleasant II") ("Respondent does not attack the ordinance on the ground that the territory lacks sufficient contiguity as was done in the first Mt. Pleasant v. Racine Case.").

we conclude that the annexation satisfies the statutory contiguity requirement in Wis. Stat. § 66.0217(3).

¶23 We observe that when the Mt. Pleasant I court stated that it relied upon "application thereto of the rule of reason" to reach its conclusion regarding statutory contiguity, 24 Wis. 2d at 47, it blurred the statutory contiguity and rule of reason analyses. This has caused confusion and conflation of the statutory contiguity requirement with the first prong of the rule of reason. See, e.g., Town of Waukechon, 53 Wis. 2d at 597. We clarify that contiguity is a legislative mandate discrete from the first prong of the judicially created rule of reason, which is described in detail below.

## B. The Rule of Reason

¶24 The rule of reason is a "judicially-created doctrine courts have applied to assess the validity of annexations," in addition to statutory requirements. Town of Lincoln v. City of Whitehall, 2019 WI 37, ¶15 n.10, 386 Wis. 2d 354, 925 N.W.2d 520. The rule, also referred to as "the test of reason," has been traced back to the 1880s. See Smith v. Sherry, 50 Wis. 210, 6 N.W. 561, 564 (1880); see also Town of Fond du Lac v. City of Fond du Lac, 22 Wis. 2d 533, 541, 126 N.W.2d 201 (1964) (applying the rule of reason that was "first announced in Smith v. Sherry"). Wisconsin courts have applied the rule of reason in annexation cases for over 50 years[14] to serve as a check on whether a municipality has

---

[14] See, e.g., Town of Lincoln v. City of Whitehall, 2019 WI 37, ¶15 n.10, 386 Wis. 2d 354, 925 N.W.2d 520; Town of Delavan v. City of Delavan, 176 Wis. 2d 516, 528, 500 N.W.2d 268 (1993); Town of Pleasant Prairie v. City of Kenosha, 75 Wis. 2d 322, 327, 249

abused its powers of annexation. Town of Delavan, 176 Wis. 2d at 538. The analysis continues to play a role in Wisconsin annexation jurisprudence.[15]

¶25 An annexation satisfies the rule of reason when three requirements are met. First, exclusions and irregularities in boundaries must not be the result of arbitrariness. Town of Pleasant Prairie, 75 Wis. 2d at 327. Second, some reasonable present or demonstrable future need for the annexed property must be shown. Id. Finally, no other factors must exist which would

---

N.W.2d 581 (1977); Town of Lafayette v. City of Chippewa Falls, 70 Wis. 2d 610, 625, 235 N.W.2d 435 (1975); Town of Center v. City of Appleton, 70 Wis. 2d 666, 668 n.4, 235 N.W.2d 504 (1975); Town of Waukesha v. City of Waukesha, 58 Wis. 2d 525, 532, 206 N.W.2d 585 (1973).

[15] Justice Rebecca Grassl Bradley's concurrence would sua sponte abolish the rule of reason, despite the parties' request that the rule remain intact. Justice Rebecca Grassl Bradley's concurrence, ¶51. It is not up to us to make or develop arguments on behalf of the parties. See Industrial Risk Insurers v. American Eng'g Testing, Inc., 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments."); State v. Pettit, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) ("We cannot serve as both advocate and judge."); see also Yorgan v. Durkin, 2006 WI 60, ¶13 n.4, 290 Wis. 2d 671, 715 N.W.2d 160 ("The proper procedure is to have an issue raised, briefed, and argued by the parties before deciding it.").

When asked at oral argument about the value of the rule of reason, the City's attorney responded, "the rule of reason protects against very, very far out circumstances," and "if we do away with the rule of reason there is no check" on such circumstances. The City's attorney further commented: "I've thought through this a lot . . . I've done municipal law for forty years and I think it would be a bad thing to do away with the rule of reason."

constitute an abuse of discretion. Id. We analyze each requirement in turn.

### 1. Arbitrariness

¶26 The first prong of the rule of reason prohibits exclusions and irregularities in boundary lines as a result of arbitrariness. Id. We have long recognized that "[w]here property owners initiate direct annexation, we do not think the municipality may be charged with arbitrary action in the drawing of the boundary lines." Town of Lyons, 56 Wis. 2d at 338. The choice of boundaries is generally within the discretion of the private party petitioners. See Town of Pleasant Prairie, 75 Wis. 2d at 342.

¶27 However, there are two exceptions when boundary lines drawn by private party petitioners may be considered impermissibly arbitrary. The first is when the municipality is the "'real controlling influence'" in selecting the boundaries. Town of Baraboo, 283 Wis. 2d 479, ¶24 (quoted source omitted). In that situation, "the municipality may be charged with any arbitrariness in the boundaries even though the property owners are the petitioners." Town of Lincoln, 386 Wis. 2d 354, ¶15 n.11. "'Influencing' the proceedings, in this context, means more than providing mere technical assistance or recommendations to the petition signers . . . rather, it means conduct by which the annexing authority dominates the petitioners so as to have effectively selected the boundaries." Town of Menasha, 170 Wis. 2d at 192. In other words, a court may determine there is arbitrariness when the annexing municipality acts as a "'puppeteer and the petitioners [are it's] puppets dancing on a municipal

16

string.'" Town of Lincoln, 386 Wis. 2d 354, ¶15 n.11 (quoting Town of Waukesha v. City of Waukesha, 58 Wis. 2d 525, 530, 206 N.W.2d 585 (1973)).

¶28 Boundaries drawn by a private party may also be considered impermissibly arbitrary when the territory subject to the proposed annexation is an "exceptional" shape. See, e.g., Town of Pleasant Prairie, 75 Wis. 2d at 342 ("Where the boundaries of an otherwise unexceptionable direct annexation are fixed by petitioners . . . without the exercise of undue influence by the annexing city or village, we see no reason why the petitioners may not determine those boundaries so as to insure the annexation's success.")(emphasis added); see also Town of Medary v. City of La Crosse, 88 Wis. 2d 101, 115-16, 277 N.W.2d 310 (Ct. App. 1979) ("The rule of reason may, however, be applied to invalidate an annexation where the annexation may result in 'gerrymandered' or 'crazy quilt' municipal boundaries, even when the annexation is initiated by a private landowner who sets the boundaries."); Town of Menasha, 170 Wis. 2d at 191 & n.3 ("There are some circumstances in which the shape of an annexed parcel's boundaries are so 'irregular' in shape, that shape alone——apart from any consideration of whether the city was acting as a petitioner——can serve to invalidate the annexation ordinance."). Wisconsin courts have recognized that "there is authority for the proposition that a court may examine the boundaries of an annexation if it has an irregular shape even though the boundaries are determined by the

17

property owners." <u>Town of Campbell v. City of La Crosse</u>, 2003 WI App 247, ¶26, 268 Wis. 2d 253, 673 N.W.2d 696.[16]

¶29 However, this second exception is limited to the most egregious situations, not mere irregularities in shape, or arm-like extensions. See <u>Town of Baraboo</u>, 283 Wis. 2d 479, ¶¶22-23

---

[16] In 1977, this court in <u>Town of Pleasant Prairie</u>, 75 Wis. 2d at 342, restated the principle from <u>Mt. Pleasant I</u> that boundaries drawn by private party petitioners can be scrutinized for arbitrariness, but only where the annexed area is an "exceptional shape." Two years later, in <u>Town of Medary v. City of La Crosse</u>, 88 Wis. 2d 101, 277 N.W.2d 310 (Ct. App. 1979) and subsequently in <u>Town of Menasha v. City of Menasha</u>, 170 Wis. 2d 181, 488 N.W.2d 104 (Ct. App. 1992), the court of appeals repeated this standard. In <u>Town of Campbell</u>, the court of appeals relied upon "the analysis in <u>Town of Pleasant Prairie</u>" to conclude that the general shape of an annexation was not open to challenge in an owner-initiated annexation. <u>Town of Campbell v. City of La Crosse</u>, 2003 WI App 247, ¶¶26-27, 268 Wis. 2d 253, 673 N.W.2d 696. However, as noted above, <u>Town of Pleasant Prairie</u> allows for such scrutiny where the annexed area is an "exceptional shape."

In subsequent cases, the court of appeals analyzed the shape of the boundaries drawn by a private party, while also continuing to call on this court to clarify the exception, see, e.g., <u>Town of Baraboo v. Village of West Baraboo</u>, 2005 WI App 96, ¶23 & n.5, 283 Wis. 2d 479, 699 N.W.2d 610 (calling on the court to clarify this issue, yet concluding the shape of the annexation was not "of a kind that removes it from the 'general rule' that owner-petitioned annexations should not be invalidated under the first component of the rule of reason" because "[i]t is not a shoestring or balloon on a stick annexation whereby the Village has relied solely on highway right-of-way to 'capture' a distant prized parcel . . ."); see also <u>Town of Lincoln v. City of Whitehall</u>, 2018 WI App 33, ¶39 n.7, 382 Wis. 2d 112, 912 N.W.2d 403 (reversed and remanded on other grounds) ("[W]e renew our call for the supreme court to clarify the law in this area.").

We now answer the court of appeals' numerous calls for clarification and reiterate that private party initiated annexations that are an "exceptional" shape may be reviewed by a court under the first prong of the rule of reason.

(reasoning that "although it produces an arm-like extension of the northern municipal boundary . . . [it] does not violate the first component of the rule of reason"); see also Town of Medary, 88 Wis. 2d at 117 ("While the shape of the annexation is somewhat irregular, the irregularity is partly necessitated because of the irregularity of the La Crosse city limits along the joint boundary of the city . . . [this] is not the extreme crazy-quilt or shoestring annexation disapproved in Mt. Pleasant.")

¶30 In this case, as to the first exception, the circuit court found that "[t]here is absolutely no evidence in the record supporting any claim that the City selected the boundaries for the Kohler annexation." Instead, the record shows that Kohler alone selected the territory to be included in the Petition, prepared the annexation map, and drew the boundary lines. The circuit court found that "the City had no input or involvement whatsoever in determining the boundaries for the annexation."[17] The circuit court's factual findings regarding the lack of proof are sufficient and legally support the conclusion that the City did not act as a "controlling influence" that orchestrated the annexation.

¶31 As to the second exception, this annexation is not an exceptional shape. The boundaries in this case are not the type

---

[17] The Town asserts that the City's involvement in presenting Kohler's annexation proposal to the Common Council and in preparing a pre-annexation agreement equates to influence or control. We agree with the circuit court that the City merely provided technical assistance which does not rise to the level of "dominat[ing] the petitioners so as to have effectively selected the boundaries." Town of Menasha, 170 Wis. 2d at 192.

of exceptional "gerrymandered" or "crazy quilt" boundaries disapproved of in Mt. Pleasant I. See Town of Baraboo, 283 Wis. 2d 479, ¶¶22-23 (distinguishing the annexation at issue from a "shoestring" or "balloon on a stick" annexation whereby the Village sought to "'capture' a distant prized parcel"). The territory is 1,450 feet wide at certain points, which is almost five times the widest dimension in the Mt. Pleasant I annexation. Additionally, the configuration is also far more substantial in its dimensions than the isolated rural area that was connected by a technical strip in Mt. Pleasant I. We agree with the circuit court that "[t]he overall shape and appearance of the Kohler annexation is [] not so arbitrary or unreasonable that it can or should be invalidated."

¶32 Based on the circuit court's findings of fact, which are supported by ample evidence, we conclude that the boundary lines are not impermissibly arbitrary under the first prong of the rule of reason.


2.   Reasonable Present or Future Demonstrable Need

¶33 Under the second prong of the rule of reason, we assess whether there is "some reasonable present or demonstrable future need for the annexed territory." Town of Pleasant Prairie, 75 Wis. 2d at 334. "To sustain the validity of an annexation the annexing municipality need not have a pressing, imperative need for the territory. A showing of a reasonable need for the

annexation will be sufficient to sustain annexation." Id. at 335.[18]

¶34 This court has considered a number of factors when determining the needs of the annexing municipality including: "'(1) A substantial increase in population; (2) a need for additional area for construction of homes . . . ; (3) a need for additional land area to accommodate the present or reasonably anticipated future growth of the municipality; . . . (4) the extension of police, fire, sanitary protection or other municipal services . . . .'" Town of Sugar Creek v. City of Elkhorn, 231 Wis. 2d 473, 482, 605 N.W.2d 274 (Ct. App. 1999) (quoting Town of Lafayette, 70 Wis. 2d at 626); see also Town of Pleasant Prairie, 75 Wis. 2d at 335-36. This list is not exhaustive as there are other factors which courts may deem relevant depending upon the particular facts of each case.

¶35 When the petition is initiated by a private party, as in the instant case, the court must also consider the petitioner's desire to be located in a particular municipality. Town of Sugar Creek, 231 Wis. 2d at 483. We have consistently given great weight to the desire of property owners to seek annexation in pursuit of

---

[18] A court's assessment of whether there is a reasonable need for the annexation is not an independent evaluation of the best interest of the parties. Town of Lyons v. City of Lake Geneva, 56 Wis. 2d 331, 338, 202 N.W.2d 228 (1972); see also Town of Medary, 88 Wis. 2d at 122-23 (reasoning that a municipality "is in no position to negotiate or pick and choose" when a petition is presented because the statute "does not make any provision for a city to annex only that portion of territory . . . for which it has a need. It must annex all of the territory or none of it.").

21

their own perceived best interests. See Town of Pleasant Prairie, 75 Wis. 2d at 329; see also Town of Waukesha, 58 Wis. 2d at 533 (reasoning that the wishes of a private party petitioning for annexation "are relevant as well as the need of the municipality to annex"); Town of Campbell, 268 Wis. 2d 253, ¶31 (observing that in past decisions we have "consider[ed] the needs of the annexed territory along with the needs of the annexing municipality in concluding that the need component is met"). When considering a property owner's desire to annex property, we incorporate other factors like "the applicable zoning ordinances, development goals, and available services into its determination of need." Town of Delavan, 176 Wis. 2d at 539.

¶36 The circuit court made detailed findings in its written decision regarding the City's need and Kohler's desire for annexation. In determining whether the City showed a present or demonstrable future need for the annexed territory, the circuit court observed that "[t]he most obvious example is in the expansion of residential housing . . . . Annexation further provides the City with the ability to achieve its long term economic planning and goals." See Town of Lyons, 56 Wis. 2d at 338 (recognizing a city's reasonable need for land which could be zoned residential). The City had planned for years to develop and expand and Kohler's proposal provided the opportunity to do so. See Town of Waukechon, 53 Wis. 2d at 599 (recognizing that "the city has a comprehensive city plan which calls for residential development to the south of the city"). Therefore, the circuit court concluded that the "City's desire to effect a reasonable and orderly plan for

22

municipal expansion, development and economic growth satisfy the need requirement under the rule of reason."

¶37 The circuit court also detailed the reasons Kohler wanted its property to be annexed to the City: to overcome the Town Board's opposition to the intended golf course development and to assure that the golf course would receive a sufficient source of water. The circuit court described Kohler's predicament with the Town as follows: "the Town Board members historically opposed the golf course development . . . [and] . . . Kohler reasonably believed that [the Town Board] would not take a different approach when it came time to . . . vote on Kohler's application for a conditional use permit."

¶38 The circuit court further weighed Kohler's concern that the Town is incapable of providing water for the golf course development. Kohler had determined that it would benefit from the availability of the City's municipal water source because it "ensured that there would be sufficient water available" for all of the buildings constructed in conjunction with the golf course. The availability of municipal water for the City's full-time fire department additionally "provided Kohler with better fire protection . . . than the Town's volunteer fire department." The circuit court's factual findings on the City's needs and Kohler's desires for the annexation are amply supported by the evidence and therefore we conclude that the second prong of the rule of reason is satisfied.

3. Other Factors That Constitute an Abuse of Discretion

¶39 Finally, we consider whether there are other factors that would constitute an abuse of discretion under the third prong of the rule of reason. Town of Pleasant Prairie, 75 Wis. 2d at 327. Under this prong, we "consider evidence that the municipality abused its discretion for reasons other than those considered under the first two components." Town of Campbell, 268 Wis. 2d 253, ¶37.

¶40 The Town asserts that the City abused its discretion by simply rubber-stamping the annexation and agreeing to support the golf course development "simply to get more money." The circuit court found, however, that "none of the facts or reasons given by the Town show the City abused its discretion in enacting the ordinance. Initially, many of the alleged 'bad acts' which the Town identifies are taken out of context and unsupported by the factual record."[19] The record includes evidence of lengthy

---

[19] Some of these "facts" considered by the circuit court include:

- Sheboygan's employees began lobbying for this golf course development even before it knew what other properties would be included in the annexation (i.e., support the golf course regardless of any other issues or needs);

- Sheboygan allowed Kohler to write and even dictate the advocacy position for the golf course, both to its officials and the DOA;

- Sheboygan knew this plan was "controversial" and could not be supported by references to its Comprehensive Plan, and asked Kohler to provide justifications for it;

- Sheboygan had no concern about ripping this land use conditional use permit decision away from the

deliberations by City officials regarding the annexation, which supports the circuit court's finding that "City officials . . . conducted a thorough analysis of the petition before recommending it to the Common Council for adoption." The City's actions were aimed at effectuating the annexation requested by Kohler and were consistent with Kohler's expressed desire to develop its land into a world championship golf course. See Sanitary Dist. No. 4-Town of Brookfield v. City of Brookfield, 2009 WI App 47, ¶21, 317 Wis. 2d 532, 767 N.W.2d 316 ("The City's actions . . . were always consistent with, and in furtherance of, the property owner's expressed desire. The property owners initiated the annexation proceeding and were assisted by the City to accomplish that intent."). The circuit court's findings of fact are amply supported by the evidence and therefore we conclude that the Town failed to demonstrate any abuse of discretion under the third prong of the rule of reason. We conclude that the annexation satisfies all three prongs of the rule of reason.

C. Signature Requirement

¶41 The Town asserts that because the territory included a large amount of state and city-owned land with no assessed value, the Petition failed to afford property owners with the representative power to veto a proposed annexation as intended by Wis. Stat. § 66.0217(3)(a)1.

---

Town and residents that surround the subject parcel.

25

¶42 Wisconsin Stat. § 66.0217(3)(a)1. provides, in relevant part:

> (a) Direct annexation by one-half approval. A petition for direct annexation may be filed with the city or village clerk if it has been signed by either of the following:
>
> > 1. A number of qualified electors residing in the territory subject to the proposed annexation equal to at least the majority of votes cast for governor in the territory at the last gubernatorial election, and either of the following:
> >
> > > a. The owners of one-half of the land in area within the territory.
> > >
> > > b. The owners of one-half of the real property in assessed value[20] within the territory.

(Emphasis added.)

¶43 The Town acknowledges that, pursuant to Wis. Stat. § 66.0217(3)(a)1.b., non-assessed state and city-owned parcels of land are excluded in calculating the amount of signatures required to approve annexation. The Town concedes that the Petition included signatures for over one-half of the owners of real property in assessed value within the territory, and thus comports with the plain language of § 66.0217(3)(a)1.b. See State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[W]e have repeatedly held that statutory interpretation 'begins with the language of the statute.

---

[20] "Assessed value," as defined by Wis. Stat. § 66.0217(1)(a), is "the value for general tax purposes as shown on the tax roll for the year next preceding the filing of any petition for annexation."

26

If the meaning of the statute is plain, we ordinarily stop the inquiry.'" (quoted source omitted)).

¶44 The Town asserts, however, that the City circumvented the intent of Wis. Stat. § 66.0217(3)(a)1. when it failed to include hundreds of acres of non-assessed state and city-owned property to determine the signature requirement. The Town argues that where the proposed annexation includes a large amount of non-assessed land, as in the instant case, the petitioner should be forced to calculate the number of signatures needed by units of acreage pursuant to § 66.0217(3)(a)1.a. According to the Town, the omission of State-owned parcels from the calculation "artificially weighs against the rights of those representing the petitioned territory to voice their choice for or against initiation of annexation proceeding." The Town admits that this is a "new, novel, issue of law" but argues that the omission of the state and city-owned land otherwise defeats the purpose of § 66.0217(3).

¶45 The Town's argument that a petitioner should be required to use one method of calculation over another is a policy argument and has no support in the statutory language. See Flynn v. DOA, 216 Wis. 2d 521, 529, 576 N.W.2d 245 (1998) ("It is for the legislature to make policy choices, ours to judge them based not on our preference but on legal principles . . . ."). It is undisputed that the Petition included the signatures of the owners of 91 percent of the territory measured by assessed value, thus complying with the requirements set forth in Wis. Stat.

27

§ 66.0217(3)(a)1.a.   We therefore conclude that the Petition complied with § 66.0217(3)(a)1.

### D.   Population Certification Requirement

¶46  Finally, the Town asserts that the Petition failed to certify the population count in accordance with Wis. Stat. § 66.0217(5)(a), which provides:

> The petition shall also specify the population of the territory. In this paragraph, "population" means the population of the territory as shown by the last federal census, by any subsequent population estimate <u>certified as acceptable by the department</u> or by an actual count <u>certified as acceptable by the department</u>.

(Emphasis added.)

¶47  At the circuit court, the Town asserted that DOA failed to issue a certification of Kohler's population count, "either by written affirmation or otherwise."  The circuit court granted the City's partial summary judgment motion on the issue, concluding that the "undisputed facts in the present case demonstrate that Kohler's petition complied with the population requirement in Wis. Stat. § 66.0217(5)(a)."  The circuit court relied in part on two affidavits submitted by DOA employee Erich Schmidtke.  Schmidtke conducted the review of the Petition and averred that by accepting the petition for a public interest review, DOA "certified" or confirmed that the Petition satisfied this requirement.

¶48  Schmidtke explained that when there is no federal census information, DOA employs a multi-step process to "certify as acceptable" the population estimate or actual population incorporated within a petition.  This process includes obtaining population information from (1) the annexation petition; (2) the

28

"Request for Annexation Review" form; and (3) an "Annexation Review Questionnaire" that the annexing city or village and the annexee town file with DOA. Schmidtke stated that he relied on population information in the Request for Annexation Review form and the petition document,[21] and noted that the City and Town also included population information in their Annexation Review Questionnaires. After "finding that the population requirement . . . was complied with, the Department accepted the petition for its review." Based on Schmidtke's averments, the circuit court found that Schmidtke "completed the 'process' in which the DOA engages in order to certify as 'acceptable' the population specified in Kohler's petition."

¶49 As determined by the circuit court, the Town failed to raise a genuine issue of material fact regarding whether DOA "certified as acceptable" the population in the Petition based on its review. As the circuit court correctly noted, Wis. Stat. § 66.0217(5)(a) does not explicitly require DOA to engage in any formal, specific process or to audit the population information in order to certify a population estimate or actual population count. Since it remains undisputed that Schmidtke, on behalf of DOA, reviewed the population in the Petition and averred that he

---

[21] In his affidavits, Schmidtke stated that he reviewed the Petition for population information; however, it appears that DOA never received a copy of the Petition. The Town is correct that DOA received only the Notice of Intention to Circulate an Annexation Petition, the Request for Annexation Review, and the Annexation Review Questionnaire.

certified it as acceptable, we uphold the circuit court's grant of partial summary judgment on this issue.

## IV.   CONCLUSION

¶50    We conclude that the annexation meets the statutory contiguity requirement in Wis. Stat. § 66.0217(3) and satisfies the rule of reason.  We further conclude that the Petition complied with the signature and certification requirements set forth in §§ 66.0217(3) and (5)(a).  Therefore, we affirm the circuit court.

*By the Court.*—The decision of the circuit court is affirmed.



Legend

City of Sheboygan

Kohler Company Annexation

30    Petitioner Parcel Index (See Table 2)

Petitioners In Favor of Annexation
(See Table 2)

Kohler Company (Proposed
Golf Course Target Parcel)

¶51 REBECCA GRASSL BRADLEY, J.  *(concurring).*  I agree with the majority that the annexation of Kohler's land to the City of Sheboygan satisfies the contiguity requirement of Wis. Stat. § 66.0217(3) (2017-18).[1]  I also agree the annexation petition complied with the signature requirement of Wis. Stat. § 66.0217(3)(a)1 and the Department "certified as acceptable" the population specified in the petition as required under Wis. Stat. § 66.0217(5)(a) (2017-18).[2]  I write separately, however, because the majority perpetuates the "rule of reason," a judicially created doctrine not found in the statutory text.[3]  I would overturn Town of Mt. Pleasant v. City of Racine[4] ("Mt. Pleasant I")——the case

---

[1] All subsequent references to Wis. Stat. § 66.0217(3) are to the 2017-18 version unless otherwise indicated.

[2] I join parts I, III.C, and III.D of the majority opinion.

[3] See, e.g., Town of Fond du Lac v. City of Fond du Lac, 22 Wis. 2d 533, 541, 126 N.W.2d 201 (1964) (discussing the origin of the principle in cases); Richard W. Cutler, Characteristics of Land Required for Incorporation or Expansion of a Municipality, 1958 Wis. L. Rev. 6, 27-29 (1958) (crediting the rule of reason's origin to a 1957 Wisconsin Supreme Court case); Clayton P. Gillette, Expropriation and Institutional Design in State and Local Government Law, 80 Va. L. Rev. 625, 681 (1994) (discussing Mt. Pleasant I and referring to the "judicially created 'rule of reason'"); Stephen L. Knowles, Comment, The Rule of Reason in Wisconsin Annexations, 1972 Wis. L. Rev. 1125, 1146 (1972) (calling the rule of reason a "judicial doctrine"); Walter K. Johnson, The Wisconsin Experience with State-Level Review of Municipal Incorporations, Consolidations, and Annexations, 1965 Wis. L. Rev. 462, 474 (1965) (referring to it as the "judicially created 'rule of reason'"); Robert D. Zeinemann, Overlooked Linkages Between Municipal Incorporation and Annexation Laws: An In-Depth Look at Wisconsin's Experience, 39 Urb. Law. 257, 285 (2007) (describing the rule of reason as "made by the courts"); majority op., ¶24 ("The rule of reason is a 'judicially created doctrine[.]'").

[4] Town of Mt. Pleasant v. City of Racine ("Mt. Pleasant I"), 24 Wis. 2d 41, 127 N.W.2d 757 (1964).

responsible for grafting the rule of reason onto the statutory contiguity requirement for annexation——and abolish the rule of reason because the judiciary invaded the exclusive authority of the legislature by rewriting the annexation statute to its liking. It is "the province and duty of the judicial department to say what the law is[,]" and not what we think it should be. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803). The legislature conditioned annexations on contiguity, procedural requirements, and nothing more. This court lacks any authority to modify, tweak or supplement the legislature's work.

I

¶52 Continuing to apply a judicial doctrine so consistently criticized for confusing judges and litigants alike in its meaning and application intractably ensconces in our jurisprudence even those cases widely recognized to be wrongly decided. "While adhering to precedent is an important doctrine for lending stability to the law, not every decision deserves stare decisis effect. After all, the purpose of stare decisis 'is to make us say that what is false under proper analysis must nonetheless be held to be true, all in the interest of stability.'" State v. Grandberry, 2018 WI 29, ¶86, 380 Wis. 2d 541, 910 N.W.2d 214 (Rebecca Grassl Bradley, J., dissenting) (quoting Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 138-40 (1997)). Besides eternalizing bad law, sustaining judicial rewriting of statutes sanctions judicial usurpation of the legislative function. "Reflexively cloaking every judicial opinion with the adornment of stare decisis threatens the rule of law, particularly when applied to interpretations wholly

2

unsupported by the statute's text." Manitowoc Co., Inc. v. Lanning, 2018 WI 6, ¶81 n.5, 379 Wis. 2d 189, 906 N.W.2d 130 (Rebecca Grassl Bradley, J., concurring).

¶53 This court has long recognized that multiple factors warrant jettisoning wrongly decided precedent:

> (1) Changes or developments in the law have undermined the rationale behind a decision; (2) there is a need to make a decision correspond to newly ascertained facts; (3) there is a showing that the precedent has become detrimental to coherence and consistency in the law; (4) the prior decision is "unsound in principle;" or (5) the prior decision is "unworkable in practice."

Bartholomew v. Wis. Patients Comp. Fund & Compcare Health Ins. Corp., 2006 WI 91, ¶33, 293 Wis. 2d 38, 717 N.W.2d 216 (footnote omitted). "The principle of stare decisis does not compel us to adhere to erroneous precedents or refuse to correct our own mistakes." State v. Outagamie Cty. Bd. of Adjustment, 2001 WI 78, ¶31, 244 Wis. 2d 613, 628 N.W.2d 376. In determining whether to uphold a prior case's statutory interpretation, "[i]t is well to keep in mind just how thoroughly [an earlier decision] rewrote the statute it purported to construe." Johnson v. Transp. Agency, 480 U.S. 616, 670 (1987) (Scalia, J., dissenting). In adopting the rule of reason, Mt. Pleasant I transformed a single word into a thorny three-part test requiring judges to inject their subjective whim into the analysis rather than applying their objective judgment.

¶54 The first two prongs of the rule ask whether boundaries are "arbitrar[y]," or there is a "reasonable" need for the property. See Town of Lafayette v. City of Chippewa Falls, 70 Wis. 2d 610, 625, 235 N.W.2d 435 (1975). Drawing the line between

3

what is rational or arbitrary, and what is reasonable or unreasonable, inherently depends on the subjective beliefs of a reviewing judge. It is no wonder why, almost 70 years after the creation of the doctrine, nobody knows how it applies or what it prohibits. Regrettably but not surprisingly, the doctrine has spawned decades of cases from which no decipherable principle of law may be discerned. See Stephen L. Knowles, Comment, The Rule of Reason in Wisconsin Annexations, 1972 Wis. L. Rev. 1125, 1140 (1972) ("[The rule of reason's] use leads to confusion and invites litigation."); Robert D. Zeinemann, Overlooked Linkages Between Municipal Incorporation and Annexation Laws: An In-Depth Look at Wisconsin's Experience, 39 Urb. Law. 257, 315-16 (2007) (stating that today's rule of reason "is a confusing set of ad hoc and oftentimes conflicting opinions" and its jurisprudence is akin to "muddy waters").

¶55 When revisiting a judicial opinion like Mt. Pleasant I, which overrode the policy choices of the people's representatives in favor of the court's preferences, "courts of last resort are duty-bound to correct the prior court's error." Manitowoc Co., Inc., 379 Wis. 2d 189, ¶81 n.5 (Rebecca Grassl Bradley, J., concurring); see also Gamble v. United States, 139 S. Ct. 1960, 1989 (2019) (Thomas, J., concurring) ("[W]e should not invoke stare decisis to uphold precedents that are demonstrably erroneous."). As the court recently recognized, "[w]e do more damage to the rule of law by obstinately refusing to admit errors, thereby perpetuating injustice, than by overturning an erroneous decision." State v. Roberson, 2019 WI 102, ¶49, 389 Wis. 2d 190, 935 N.W.2d 813 (quoting Johnson Controls, Inc. v. Emp'rs Ins. of

4

Wausau, 2003 WI 108, ¶100, 264 Wis. 2d 60, 665 N.W.2d 257). "If the precedent is bad, let it be overruled by all means, or let the legislature regulate the matter by statute." Francis Lieber, On Civil Liberty and Self-Government 211 (Theodore D. Woolsey ed., 3d ed. 1883). With respect to annexation, the legislature had regulated the matter by statute but that didn't stop the judiciary from stepping in to tamper with the legislature's policy choices in order to advance its own. This court should disavow its decades-old interference with the legislature's exclusive prerogative to write laws.

II

¶56 In Mt. Pleasant I, the court purported to address whether the annexation by the City of Racine of property located in the Town of Mt. Pleasant "was void because the area proposed to be annexed [was] not contiguous to the city of Racine within the requirements of sec. 66.021(2)(a)[.]" Town of Mt. Pleasant v. City of Racine, 24 Wis. 2d 41, 45, 127 N.W.2d 757 (1964). The land at issue in Mt. Pleasant I was 145 acres total, including a corridor roughly "1,705 feet long, and varying in width from approximately 306 feet to 152 feet." Id. at 43. At the end of this corridor, 153 feet of the annexed area touched the City of Racine. Id. at 44. On appeal, the court considered whether the proposed annexation satisfied the statutory requirement of contiguity. Id. at 45. At the time of Mt. Pleasant I, Wis. Stat. § 66.021(2)(a) (1961-62)[5] contained one substantive requirement

_____

[5] All subsequent references to Wis. Stat. § 66.021(2) are to the 1961-62 version unless otherwise noted.

5

for annexation: contiguity.[6] The statutory provision at issue between the parties in this case retains this sole substantive requirement.[7]

¶57 The Mt. Pleasant I majority neglected to analyze the statutory meaning of "contiguous," a deficit to which the majority in this case alludes but nevertheless declines to rectify. Majority op., ¶20. Instead of developing the meaning of "contiguous" under the annexation statute, the majority elects to distinguish the annexed territory in Mt. Pleasant I from the annexed property in this case, based upon the "significant degree of physical contact between the properties." Majority op., ¶22 (citation omitted). I agree with the majority's conclusion; giving the word its plain meaning, Kohler's property is "contiguous" to the City of Sheboygan. See Contiguous, Black's Law Dictionary (11th ed. 2019) ("Touching at a point or along a boundary; ADJOINING").

---

[6] In 1964 the statute provided:

Methods of annexation. Territory contiguous to any city or village may be annexed thereto in the following ways:

(a) Direct Annexation. . . .

Wis. Stat. § 66.021(2) (emphasis added).

[7] Wisconsin Stat. § 66.0217(3) provides:

Other methods of annexation. Subject to ss. 66.0301(6)(d) and 66.0307(7), and except as provided in sub. (14), territory contiguous to a city or village may be annexed to the city or village in the following ways:

(a) Direct annexation by one-half approval. . . .

(emphasis added).

6

¶58 In this case, the majority acknowledges "[t]he Mt. Pleasant I court focused its discussion of contiguity on the validity of 'corridor' or 'strip' annexations," which Mt. Pleasant I described as "isolated areas connected by means of a technical strip a few feet wide." Mt. Pleasant I, 24 Wis. 2d at 46; majority op., ¶20. Somewhat ironically, Mt. Pleasant I's concern over shoestring or gerrymander annexations was completely untethered to the statutory contiguity requirement. In lieu of ascertaining the meaning of "contiguous" under the annexation statute, that court supplanted the statutory language altogether in favor of the judicially-invented "test of reason." Mt. Pleasant I, 24 Wis. 2d at 45-46. While the legislature imposed but one substantive requirement——contiguity——the judiciary fashioned three components on which it would condition its approval of an annexation: "(1) Exclusions and irregularities in boundary lines must not be the result of arbitrariness; (2) some reasonable present or demonstrable future need for the annexed property must be shown; and (3) no other factors must exist which would constitute an abuse of discretion." Town of Lafayette, 70 Wis. 2d at 625 (footnote omitted). By inquiring whether the boundary lines were "reasonable in the sense that they were not fixed arbitrarily, capriciously, or in the abuse of discretion[,]" the Mt. Pleasant I court abandoned the statutory text altogether, instead proclaiming that "[s]hoestring or gerrymander annexation[s]" do not coincide with legislative "intent" as the court somehow divined it. Mt. Pleasant I, 24 Wis. 2d at 46. Without any pretense of ascertaining the meaning of "contiguous" under the annexation statute, the court held, in conclusory

7

fashion, that under the extra-textual "rule of reason . . . the annexation of the area in question does not meet the statutory requirement of contiguity." Id. at 47.

¶59 Mt. Pleasant I's determination that the boundary lines of the proposed annexation were not "reasonable," i.e., were "fixed arbitrarily, capriciously, or in the abuse of discretion[,]" has no bearing on whether annexed property is contiguous. Boundary lines could be "fixed arbitrarily" and unreasonable, and nevertheless be "contiguous" under the annexation statute. Rather than applying the sole criterion for a lawful annexation——contiguity——the Mt. Pleasant I court instead introduced considerations it found pertinent under its policy predilections, but were in fact extraneous to the statutory language. See Mt. Pleasant I, 24 Wis. 2d at 47 (Wilkie, J., dissenting) (citing § 66.021(2)) ("The majority has engrafted onto the statute the additional requirement that a proposed annexation is subject to review under the 'rule of reason' to determine whether the proposed boundary lines are 'reasonable in the sense that they were not fixed arbitrarily, capriciously, or in abuse of discretion.'" (footnote omitted)). In doing so, the court crossed the judicial boundary of declaring what the law says and intruded on the legislature's prerogative to proclaim what the law should be.

¶60 Grounded in the premise that judges know better than the people's representatives, the rule of reason displays judicial arrogance at its worst. See Clayton P. Gillette, Expropriation and Institutional Design in State and Local Government Law, 80 Va. L. Rev. 625, 681-82 (1994) (noting that implicit in Mt. Pleasant I's rationale is "that judicial intervention could provide a more

8

accurate decision about the propriety of particular annexations");
Laurie Reynolds, Rethinking Municipal Annexation Powers, 24 Urb.
Law. 247, 295 n.185 (1992) ("The . . . rule of reason . . . allows
wide-ranging judicial inquiry to evaluate the policy decisions
behind the municipality's annexation." (citation omitted)). The
rule of reason represents a relic of a by-gone era, reflecting the
long-discredited notion that it was the duty of jurists to "do
justice."[8]

¶61 Mt. Pleasant I also violated a cardinal canon of
statutory interpretation by adding words (and a lot of them) to
the statutory text. "Under the omitted-case canon of statutory
interpretation, '[n]othing is to be added to what the text states
or reasonably implies (casus omissus pro omisso habendus est).
That is, a matter not covered is to be treated as not covered.'"
Enbridge Energy Co., Inc. v. Dane Cty., 2019 WI 78, ¶23, 387
Wis. 2d 687, 929 N.W.2d 572 (quoting State ex. rel. Lopez-Quintero
v. Dittman, 2019 WI 58, ¶18, 387 Wis. 2d 50, 928 N.W.2d 480); see
also Wisconsin Ass'n of State Prosecutors v. WERC, 2018 WI 17,
¶45, 380 Wis. 2d 1, 907 N.W.2d 425 ("Nothing is to be added to
what the text states or reasonably implies[.]" (quoting Antonin
Scalia & Brian Garner, Reading Law: The Interpretation of Legal
Texts 93 (2012))); Dawson v. Town of Jackson, 2011 WI 77, ¶42, 336
Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute

---

[8] Reportedly, Judge Learned Hand once implored Justice Oliver
Wendell Holmes to "Do Justice!" As the story goes, Justice Holmes
responded, "That is not my job. My job is to play the game
according to the rules." See Michael Herz, "Do Justice!":
Variations of a Thrice-Told Tale, 82 Va. L. Rev. 111, 111 (1996)
(citing Learned Hand, A Personal Confession, in The Spirit of
Liberty 302, 306–07 (Irving Dilliard ed., 3d ed. 1960)).

words the legislature did not see fit to write." (citation omitted)).

¶62 The majority in this case does not attempt to dispute the existence of statutory contiguity (under its "common, ordinary, and accepted meaning")[9] in Mt. Pleasant I, nor can it identify any language in Wis. Stat. § 66.021(2) even impliedly suggesting that the annexation must satisfy the rule of reason, nor can it connect the plain meaning of "contiguous" to any element of the rule of reason. See § 66.021(2); majority op., ¶¶20-22 (discussing Mt. Pleasant I's 153 foot border, which the Mt. Pleasant court held insufficient to meet the statutory contiguity requirement, while acknowledging the persuasive authority on which it relied set the line at 100 feet). At least the majority in this case acknowledges "that when the Mt. Pleasant I court stated that it relied upon 'application thereto of the rule of reason' to reach its conclusion regarding statutory contiguity . . . , it blurred the statutory contiguity and rule of reason analyses." Majority op., ¶23. The majority also concedes that Mt. Pleasant I did not actually interpret the statute but instead added additional hurdles proposed annexations must satisfy in order to survive judicial scrutiny: "contiguity is a legislative mandate discrete from the first prong of the judicially created rule of reason[.]" Id.

¶63 Just like its predecessor statute in 1964, Wis. Stat. § 66.0217(3) requires only contiguity for annexations. See § 66.0217(3). Preventing "[s]hoestring or gerrymander[ed]

_____

[9] State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

10

annexations" is a policy matter for the Wisconsin Legislature to adopt, not this court. Mt. Pleasant I blatantly disregarded the text of the annexation statute, remade the law to its liking, and should be overruled as both "unsound in principle" and "wrongly decided." In this case, I would rely on the plain meaning of the annexation statute and consider only whether Kohler's property is contiguous to the City of Sheboygan——that is, "[t]ouching at a point or along a boundary; ADJOINING"; "neighbouring, in close proximity[]"; "touching, in contact; adjoining." Contiguous, Black's Law Dictionary (11th ed. 2019); Contiguous, Oxford English Dictionary (6th ed. 1993). It is. The analysis ends there.

III

¶64 The "rule of reason" does not enjoy the longevity suggested by the majority. In a passing reference, the majority cites Smith v. Sherry, 50 Wis. 210, 6 N.W. 561 (1880), as the rule's foundation. See majority op., ¶24. Not so. In Town of Fond du Lac v. City of Fond du Lac, 22 Wis. 2d 533, 541, 126 N.W.2d 201 (1964), the court erroneously declared the rule of reason to have been "first announced in Smith v. Sherry[.]" Sherry's holding did not create the rule of reason and earlier courts twisted its language in order to give the rule a misleading lineage.

¶65 In Sherry, the court considered the validity of the Village of Shawano's annexation of non-adjoining property over six miles away. See Sherry, 50 Wis. at 561. The court held the annexation invalid pursuant to Article 11, Section 3 of the Wisconsin Constitution, which gives the legislature the power to organize cities and villages. Sherry, 50 Wis. at 564. The

11

annexation was constitutionally invalid because the property was not "adjacent or contiguous" to the Village, not because of arbitrary boundary lines or an abuse of discretion. See Sherry, 50 Wis. at 564. The court interpreted cities and villages in Article 11, Section 3 to "impl[y] an assemblage of inhabitants living in the vicinity of each other and not separated by any other intervening civil division of the state." Id. Because six miles separated the Village from the property in question, Sherry held "the territory so admitted to be included . . . is an abuse and violation of that provision of section 3, art. 11, of the constitution[.]" Id. The court concluded by saying that it was imposing no constraints on the legislature in fixing boundaries for cities or villages, "so long as the territory of which [they are] composed is adjacent or contiguous[.]" Id. at 564-65.

¶66 Almost fifty years of academic scholarship and cases reveal the shaky foundation for the current three-pronged rule of reason. Based solely on improper judicial policy making, the rule of reason has no foundation in Sherry or the Wisconsin Constitution. Sherry "has been infrequently cited in the past sixty years and misused when it was cited." Zeinemann, supra ¶54, at 277 & n.145 (internal footnote omitted; footnote omitted) (explaining courts miscited Sherry for the basis of the current rule of reason). Wisconsin courts have cited Sherry in annexation cases only twice since 1975. For good reason. "[T]oday's Rule of Reason bears little resemblance to the rule from Sherry" and "departs from Sherry." Id. at 278 (footnote omitted); see also Knowles, supra ¶54, at 1133 (discussing two weaknesses with the rule of reason's purported basis in the constitution). While the

12

rule of reason is a limitation on arbitrary actions by municipalities, the constitutional provision applied in Sherry is a "positive grant of power" allowing municipalities to govern themselves. See Wis. Const. art. 11, § 3 ("Cities and villages organized pursuant to state law may determine[.]"); Knowles, supra ¶54, at 1133 (discussing the same).

¶67 The expressed purpose for the judicial creation of the rule of reason was to effectuate a perceived legislative "intent" to prohibit certain annexations. Mt. Pleasant I, 24 Wis. 2d at 46 (suggesting that a corridor annexation "does not coincide with legislative intent"); see also Richard W. Cutler, Characteristics of Land Required for Incorporation or Expansion of a Municipality, 1958 Wis. L. Rev. 6, 29 (1958) ("Presumably the court interpreted the rule of reason as representing legislative intent." (footnote omitted)); Knowles, supra ¶54, at 1139 ("The principal advantage of the rule of reason in the contiguity cases is that, at least in theory, it may be used to invalidate annexations allowed by the statutes but clearly contrary to legislative intent."). This court rightly discarded legislative "intent" as a permissible indicator of statutory meaning. See State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110 ("It is the enacted law, not the unenacted intent, that is binding on the public."); see also State v. Lopez, 2019 WI 101, ¶39, 389 Wis. 2d 156, 936 N.W.2d 125 (Rebecca Grassl Bradley, J., concurring) ("An interpretation based on what the legislature intended a statute to mean is improper."); Winebow, Inc. v. Capitol-Husting Co., 2018 WI 60, ¶40, 381 Wis. 2d 732, 914 N.W.2d 631 (Rebecca Grassl Bradley, J., dissenting)

("[L]egislative intent behind enactment of a law . . . cannot govern statutory interpretation. Rather, our analysis must focus on the statutory language itself[.]"); State v. Grandberry, 380 Wis. 2d 541, ¶55 (Kelly, J., concurring) ("[W]e give effect only to what the legislature does, not what it tried to do." (footnote omitted)).

¶68 Crafting judicial doctrines based on the collective intent of a large body relies on the false premise that a deliberative body acts with a single purpose. See John W. MacDonald, The Position of Statutory Construction in Present Day Law Practice, 3 Vand. L. Rev. 369, 371 (1950) ("[A]nyone who has ever dealt with the legislative process knows how conspicuously absent is a collective legislative intention."); see also Scalia & Garner, Reading Law, supra ¶61, at 391-96 ("[C]ollective intent is pure fiction because dozens if not hundreds of legislators have their own subjective views on the minutiae of the bills they are voting on[.]"). Legislative intent is nothing more than a pretense to conceal what the court is actually doing——making law reflecting its own biases and policy predilections. See John F. Manning, Without the Pretense of Legislative Intent, 130 Harv. L. Rev. 2397, 2400, 2406-07 (2017) ("[L]egislative intent is a fiction, something judges invoke to elide the fact that they are constructing rather than identifying a legislative decision."). "It is impossible to find the 'will,' 'design,' 'intent,' or 'mind' . . . without making some value judgment about what should count as that legislature's intended decision and why." Id. at 2431 (emphasis in original). The only foundation upon which the

14

rule of reason stands, legislative intent, collapsed long ago.[10] There is nothing left upon which the rule can, or should, stand.

¶69 Mt. Pleasant I was the first case to use the rule of reason to invalidate an annexation for lack of contiguity. Knowles, supra ¶54, at 1138. Setting aside the impropriety of the court's action, Mt. Pleasant I failed to explain it. See Walter K. Johnson, The Wisconsin Experience with State-Level Review of Municipal Incorporations, Consolidations, and Annexations, 1965 Wis. L. Rev. 462, 479 (1965). Mt. Pleasant I neglects to explain why the annexation was arbitrary, capricious, or an abuse of discretion, nor does it specify the court-proclaimed "lack of reason for the annexation shape." Id.; see also Mt. Pleasant I, 24 Wis. 2d at 45-47. Instead, it substituted its own will for that of local officials. Johnson, supra ¶69, at 479.

¶70 In this case, the majority elects to continue applying the rule of reason, but the rule's incurable flaws prevent the majority from contributing any clarity. With respect to the arbitrariness prong of the test, the majority concludes the land at issue "is not an exceptional shape[,]" before declaring it is not similar to the "boundaries disapproved of in Mt. Pleasant I." Majority op., ¶31. The aerial images provided by the Town of Wilson, however, show that the shape of the annexed property is almost identical to the annexation's shape in Mt. Pleasant I.

---

[10] Even the great purposivists of their time, Henry Hart and Albert Sacks, dismissed the idea of discerning a collective legislative intent. See John F. Manning, Without the Pretense of Legislative Intent, 130 Harv. L. Rev. 2397, 2410 (2017) (citing Henry M. Hart, Jr. & Albert M. Sacks, The Legal Process 1374 (William N. Eskridge, Jr. & Philip P. Frickey eds., Foundation Press 1994) (1958)).

Parties will remain without any guidance in future annexation disputes.

¶71 The other requirements of the rule of reason suffer from the same infirmities. Under the third prong, "no other factors must exist which would constitute an abuse of discretion." Town of Pleasant Prairie v. City of Kenosha, 75 Wis. 2d 322, 327, 249 N.W.2d 581 (1977) (footnote omitted). What factors rise to the level of an abuse of discretion? Prior decisions shed little light on this part of the inquiry. The majority in this case defines the standard as encompassing "reasons other than those considered under the first two components." Majority op., ¶39 (quoted source omitted). Does this mean an annexation reflects an abuse of discretion whenever a judge identifies any other reason for rejecting the annexation besides arbitrariness or lack of reasonable need? See Manning, supra ¶68, at 2400.

¶72 The rule of reason does not work because it is not a rule of law; it is a mechanism by which the judiciary exercises not its judgment but its will. The majority and Justice Hagedorn's concurrence both suggest the court acquiesce to the parties' requests to retain the rule of reason. See majority op., ¶24 n.15. (noting the "parties' request that the rule remain intact[]"); Justice Hagedorn's concurrence, ¶78 (with respect to "discarding the rule of reason . . . . the parties . . . expressly asked us not to do so.") Litigants, of course, advocate for decisions benefitting their interests. Judges, however, have an independent duty to say what the law is, regardless of what the parties may wish it to be. See Marbury, 5 U.S. (1 Cranch) at 177. The majority mischaracterizes abolishing the rule of reason as "abandon[ing]

16

our neutrality to develop arguments." See majority op., ¶24 n.15 (quoted source omitted). Overturning a law the court had no authority to invent is not abandoning neutrality; it is our judicial role and our responsibility to ensure we exercise only judicial and not legislative power. See Marbury, 5 U.S. (1 Cranch) at 177. If parties ask us to usurp the role of the legislature, we must decline. The City's arguments in favor of retaining the rule of reason may be valid, but they are arguments properly made before the legislature, not the bench. It "is the obligation of the Judiciary . . . to confine itself to its proper role[.]" Koschkee v. Taylor, 2019 WI 76, ¶54, 387 Wis. 2d 552, 929 N.W.2d 600 (quoting City of Arlington v. F.C.C., 569 U.S. 290, 327 (2013) (Roberts, C.J., dissenting)). The proper judicial role does not include "reweigh[ing] the policy choices of the legislature." Mayo v. Wisconsin Injured Patients and Families Comp. Fund, 2018 WI 78, ¶¶26, 40, 383 Wis. 2d 1, 914 N.W.2d 678. Because jurists are not policy makers, this court should apply the annexation law as enacted by the legislature and shed the rule of reason from the contiguity analysis.

¶73 The majority proposes the "proper procedure" would be to wait for the parties to raise the issue before deciding it. See majority op., ¶24 n.15 (quoted source omitted). The parties in this case did raise the rule of reason, asking us to apply it. If in the course of adjudicating a controversy, we discover we lack any authority to apply a law, we are duty-bound to say so. Cf. Trump v. Hawaii, 138 S. Ct. 2392, 2423 (2018) (abrogating Korematsu v. United States, 323 U.S. 214 (1944), even though neither party sought it, but simply because the dissent's invocation "afford[ed]

17

th[e] Court the opportunity to make express . . . <u>Korematsu</u> was gravely wrong the day it was decided . . . and . . . 'has no place in law[.]'" (quoted source omitted)). The essence of the judicial function is not to fashion law based on our policy preferences, but the "duty to correctly 'expound' it." <u>Gamble v. United States</u>, 139 S. Ct. 1960, 1982 (2019) (Thomas, J., concurring) (quoting Letter from J. Madison to N. Trist (Dec. 1831), in 9 The Writings of James Madison 477 (G. Hunt ed. 1910) (Writings of Madison)); <u>see also</u> Gary Lawson, <u>The Constitutional Case Against Precedent</u>, 17 Harv. J.L. & Pub. Pol'y 23, 26 (1994) ("[A] vital part of the judicial task is to determine whether a claimed source of law . . . may be inapplicable . . . because it conflicts with some hierarchically superior legal source."). Just as the Constitution reigns supreme over statutory law, so too does statutory law trump judicial policy making.[11] With respect to the rule of reason, "[w]e should get out of this area, where we have no right to be, and where we do neither ourselves nor the [state] any good by remaining." <u>Planned Parenthood of Southeastern Pa. v. Casey</u>, 505 U.S. 833, 1002 (1992) (Scalia, J., concurring in the judgment in part and dissenting in part). Because its creation reflects improper overreaching by the judiciary, we should abandon the rule of reason, regardless of the consequences.[12]

---

[11] <u>See</u> Justice Hagedorn's concurrence, ¶¶76-77 (acknowledging the rule of reason is "judicial policy-making" and the "rule of judges" instead of the "rule of law[,]" but nevertheless applying it as "a fair statement and application of" the doctrine.

[12] Justice Hagedorn's concurrence recommends a "full hearing on the merits of this important issue" in order to "ensure that we are not missing anything" and to identify "the consequences of our decision" before deciding whether to discard the rule of reason. Justice Hagedorn's concurrence, ¶78. Continuing to tread on the

IV

¶74 I agree with the majority in concluding that the annexation of Kohler's property by the City of Sheboygan satisfied the contiguity requirement under Wis. Stat. § 66.0217(3). I cannot join the majority's analysis because its continued adherence to the rule of reason perpetuates a non-textual interpretation of our annexation statute, gives life to the antiquated notion of legislative "intent," and validates judicial policy making. Because I would overturn Mt. Pleasant I, abolish the rule of reason, and determine contiguity based solely on the text of the annexation statute, I respectfully concur.

¶75 I am authorized to state that Justice DANIEL KELLY joins this concurrence.

---

exclusive province of the legislature in the interests of prudence elevates the consequences of our decision making over the statutory text. "But it is precisely because people differ over what is sensible and what is desirable that we elect those who will write our laws——and expect courts to observe what has been written." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 22 (2012). When this court created the rule of reason, it observed what the legislature had written, decided it didn't like it, and replaced the statutory text with what the court deemed to be a preferable test. Regardless of the consequences, such an invasion of the legislative's prerogative should not stand.

19

¶76 BRIAN HAGEDORN, J. *(concurring).* The majority opinion is a fair statement and application of the analytical framework our cases have announced. That's the good news, and the reason I join the majority. The bad news is that our cases are about as straightforward as a Halloween corn maze, and employ interpretive principles that should strike terror into everyone committed to the rule of law rather than the rule of judges.

¶77 In a tour de force, Justice Rebecca Grassl Bradley's concurrence lays out the manifold problems with the rule of reason. It reminds me of the two rules Justice Neil Gorsuch tells his law clerks. The first rule is, "Don't make stuff up." The second rule is, "When people beg, and say, 'Oh the consequences are so important,' and when they say, 'You're a terrible, terrible person if you don't,' just refer back to Rule No. 1."[1] A casual read-through of our cases creating, modifying, and applying the rule of reason leads to the discomforting notion that the "legal test" the judiciary has superimposed onto annexation challenges is nothing more than a fancy-sounding façade for the real agenda: judicial policy-making pretending to be law.

¶78 With that said, I have one bit of pause before officially saying so and discarding the rule of reason from our jurisprudence. Namely, the parties did not ask us to go there, and in oral argument, expressly asked us not to do so. Eliminating the rule of reason would be a significant change in our doctrine. Before taking this step, I believe we would be best served by adversarial

---

[1] https://www.wsj.com/articles/the-high-courts-rocky-mountain-originalist-11567792378.

briefing and argument. A full hearing on the merits of this important issue would help ensure that we are not missing anything and that the consequences of our decision are fully fleshed out beforehand. Therefore, I join the majority, but would welcome an opportunity to revisit the rule of reason.